**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

NAEEM AZAD and MIHAI CALUSERU, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

CAITLYN JENNER and SOPHIA HUTCHINS,

Defendants.

Case No: 2:24-cv-9768-SB-JC

**MOTION TO APPOINT LEAD PLAINTIFF AND COUNSEL**

[15 U.S.C. §§ 77z-1, 78u-4]

Judge: Hon. Stanley Blumenfeld Jr.
Hearing: February 14, 2025, 8:30 a.m.
Location: Courtroom 6C

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

NOTICE OF MOTION ..... 1

MEMORANDUM ..... 1

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 4

A. Plaintiffs Satisfied the PSLRA's Notice Requirement ..... 4

B. The Jenner Community Voices Group Has the Largest Financial Losses ..... 4

C. Alternatively, Movant Lee Greenfield has the Largest Loss and No Movant Objects to His Appointment as Lead Plaintiff ..... 7

D. The Jenner Community Voices Group Satisfies Rule 23 ..... 7

i. Typicality ..... 7

ii. Adequacy ..... 8

E. Alternatively, Movant Lee Greenfield Satisfies Rule 23 ..... 9

F. The Court Should Appoint FMF Lead Counsel ..... 9

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Alperstein v. Sona Nanotech*,
2021 WL 4704710 (C.D. Cal. Mar. 16, 2021) ... 4

*Brady v. Top Ships Inc.*,
324 F.Supp.3d 335 (E.D.N.Y 2018) ... 6

*Burns v. UP Fintech Holding Ltd.*,
2024 WL 387261 (C.D. Cal. Jan. 30, 2024) ... 3

*Cushman v. Fortress Biotech, Inc.*,
2021 WL 7449182 (E.D.N.Y. Mar. 24, 2021). ... 5

*Deora v. NantHealth, Inc.*,
2017 WL 3084161 (C.D. Cal. May 31, 2017) ... 8

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ... 8

*Flannery v. Snowflake Inc.*,
2024 WL 4008764 (N.D. Cal. Aug. 29, 2024) ... 5, 6

*Hadley v. Kellogg Sales Co.*,
2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ... 10

*Hadley v. Kellogg Sales Co.*,
2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) ... 10

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ... 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ... 7

*Hessefort v. Super Micro Computer, Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ... 3

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ... 2, 4, 5, 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3rd Cir. 2001) .......... 9

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) .......... 9

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) .......... 3

*In re Surebeam Corp. Sec. Litig.*,
2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .......... 7

*Kinney v. Capstone Turbine Corp.*,
2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) .......... 8

*Koffsmon v. Green Dot Corp.*,
2022 WL 170636 (C.D. Cal. Jan. 19, 2022) .......... 6

*Krommenhock v. Post Foods, LLC*,
2021 WL 2910205 (N.D. Cal. June 25, 2021) .......... 11

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020) .......... 10

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) .......... 8

*Martin v. Monsanto Co.*,
2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) .......... 10

*May v. Barclays PLC*,
2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) .......... 6

*McMorrow v. Mondelez Int'l, Inc.*,
2021 WL 859137 (S.D. Cal. Mar. 8, 2021) .......... 10

*McMorrow v. Mondelez Int'l, Inc.*,
2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) .......... 10

*Menashe v. Biogen Inc.*,
2021 WL 5533455 (C.D. Cal. Feb. 24, 2021) .......... 8

*Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2021) .......... 10

*Ramos v. Comerica, Inc.*, No. 2:23-cv-06843-SB-JPR, Dkt. No. 36, Order (C.D. Cal. Nov. 30, 2023) .......... 2, 3, 4, 8

*Rawa v. Monsanto Co.*, 2018 WL 2389040 (E.D. Mo. May 25, 2018) .......... 11

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) .......... 7

*Silverberg v. DryShips Inc.*, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) .......... 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .......... 8

*Tanne v. Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005) .......... 3

*Teran v. Subaye, Inc.*, 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) .......... 8

*Testone v. Barleans's Organic Oils, LLC*, 2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) .......... 10

*Water Island Event-Driven Fund v. MaxLinear, Inc.*, 2023 WL 8812875 (S.D. Cal. Dec. 20, 2023) .......... 3, 6, 7, 8

**Statutes**

15 U.S.C. § 77z-1(a)(3)(A)(i) .......... 4

15 U.S.C. § 77z-1(a)(3)(B) .......... 1

15 U.S.C. § 77z-1(a)(3)(B)(i) .......... 5

15 U.S.C. § 77z-1(a)(3)(B)(iii) .......... 4

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .......... 2

15 U.S.C. § 77z-1(a)(3)(B)(v) .......... 9

15 U.S.C. § 78u-4(a)(3)(A)(i) .......... 3, 4

15 U.S.C. § 78u-4(a)(3)(B) .......... 1

15 U.S.C. § 78u-4(a)(3)(B)(i) .......... 2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .......... 3

15 U.S.C. § 78u-4(a)(3)(B)(v) .......... 9

15 U.S.C. §78u-4(a)(3)(B)(iii) .......... 4

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) .......... 2

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on February 14, 2025, at 8:30 a.m., or as soon thereafter as may be heard, at the United States Courthouse for the Central District of California, 350 West 1st Street, Los Angeles, California, in Courtroom 6C, before the Honorable Stanley Blumenfeld Jr., Naeem Azad, Mihai Caluseru, Lee Greenfield, Justin Chamley, and Radoslaw Wroblewski (collectively, "Movants"), will and hereby do move the Court, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an Order appointing them Lead Plaintiff and appointing their counsel, Lead Counsel.

The Motion is based on this Notice of Motion, the below Memorandum, the concurrently-filed Declaration of Jack Fitzgerald ("Fitzgerald Decl."), and exhibits thereto; Movants' concurrently-filed Joint Declaration in Support of the Motion ("Joint Decl."), and exhibits thereto; and all further written and oral argument and evidence offered in support of the Motion.

This Motion was made following a conference of counsel pursuant to Civil Local Rule 7-3, which took place on January 6, 2025. (Fitzgerald Decl. ¶ 2.) As of the filing of this Motion, Plaintiffs are unaware of any other lawsuits filed asserting similar claims, and unaware of anyone else who intends to move for appointment as Lead Plaintiff. (*Id.* ¶ 3.)

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs Naeem Azad and Mihai Caluseru filed this lawsuit on November 13, 2024, against Defendants Caitlyn Jenner and Sophia Hutchins, alleging their violations of the Securities Act of 1933 and Exchange Act. Plaintiffs allege Jenner, "a high-profile international celebrity and former Olympic gold-medalist, aided by her business partner and manager Hutchins, orchestrated a scheme wherein she offered and sold unregistered securities – the

cryptocurrency, $JENNER – and fraudulently solicited financially unsophisticated investors," in violation of federal and state securities laws. (Dkt. No. 1, Compl. ¶ 1 (footnote omitted).) Plaintiffs allege they and other putative class members suffered financial losses resulting from Defendants' misleading statements and omissions, and subsequent drop in the price of $JENNER. (*See id.* ¶¶ 11-12 (Azad and Caluseru alleging losses of at least $25,000 and $31,000, respectively); *id.* 102-149 (asserting causes of action for securities law violations).)

Movants, who first came together via their active participation in multiple $JENNER-focused Telegram groups beginning in June, 2024,[1] now move pursuant to the PSLRA, to be appointed Lead Plaintiff. (*See* Joint Decl. ¶¶ 2-6.) The Court should grant the Motion because this "group of persons," 15 U.S.C §§ 77z-1(a)(3)(B)(iii)(I) & 78u-4(a)(3)(B)(iii)(I)—the "Jenner Community Voices Group," or "JCV Group"—is the presumptively most adequate plaintiff under the PSLRA because the JCV Group timely filed this motion, has the largest financial interest in the outcome of this litigation, and will adequately represent the class's interests in pursuing claims typical of other class members' claims. *See id.* The Court should also approve its choice of Fitzgerald Monroe Flynn PC ("FMF"), which has substantial experience prosecuting complex class actions and will continue vigorously prosecuting this case, as Lead Counsel.

## II. LEGAL STANDARD

"The PSLRA requires district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *Ramos v. Comerica, Inc.*, No. 2:23-cv-06843-SB-JPR, Dkt. No. 36, Order at 2 (C.D. Cal. Nov. 30, 2023 (Blumenfeld, J.) ["*Ramos* Order"[2]] (quoting *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i))). This is accomplished through a three-step process.

---

[1] Telegram is a messaging app allowing users to send messages and files among groups of up to 200,000 people. *See* https://telegram.org/faq#q-what-is-telegram-what-do-i-do-here.

[2] A copy of the *Ramos* Order is attached to the Fitzgerald Decl. as Exhibit 1.

First, "the plaintiff must publish notice of the lawsuit in a 'widely circulated national business-oriented publication or wire service.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). "The notice must advise purported class members of the asserted claims and class period and disclose that any purported class member may move to serve as lead plaintiff within 60 days of the publication." *Id.* (citation omitted).

Second, "the district court must identify the movant with the largest alleged losses and determine, based on pleadings and declarations, whether the movant has shown adequacy and typicality as required by Rule 23." *Id* at 3 (citing *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021)). "At step two, the process isn't adversarial, and the Rule 23 determination is based on the movant's pleadings and declarations." *Water Island Event-Driven Fund v. MaxLinear, Inc.*, 2023 WL 8812875, at *5 (S.D. Cal. Dec. 20, 2023) (citing *In re Mersho*, 6 F.4th at 899). Thus, "[t]he movant 'need only make a prima facie showing of its typicality and adequacy.'" *Id.* (quoting *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018)). "Once the district court has determined that the movant with the largest financial stake has made a prima facie showing of adequacy and typicality, that movant becomes the presumptively most adequate plaintiff." *Burns v. UP Fintech Holding Ltd.*, 2024 WL 387261, *2 (C.D. Cal. Jan. 30, 2024) (internal quotations and citations omitted).

Third, if the Court determines the movant or movants are "presumptively the most adequate plaintiff," then "other parties have an opportunity to rebut the presumption that [the movant or movants are] the most adequate plaintiff." *Ramos Order* at 3 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). But "the statutory presumption in favor of the most adequate plaintiff . . . 'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 668 (C.D. Cal. 2005) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## III. ARGUMENT

### A. Plaintiffs Satisfied the PSLRA's Notice Requirement

On November 18, 2024—within "20 days after the date on which the complaint [wa]s filed," 15 U.S.C §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i)—Plaintiffs published via AP Newswire and PR Newswire (*see* Fitzgerald Decl. ¶ 5 & Ex. 2) notice "explain[ing] the statements giving rise to the claims of federal securities laws violations, the class period, and that potential lead plaintiffs 'must move the Court no later than [January 17, 2025].'" *See Alperstein v. Sona Nanotech*, 2021 WL 4704710, at *3 (C.D. Cal. Mar. 16, 2021) (notice published via PRNewswire satisfied the PSLRA). Accordingly, Plaintiffs have satisfied the first step of the PSLRA lead plaintiff selection process. *See Ramos* Order at 2-3.

### B. The Jenner Community Voices Group has the Largest Financial Losses

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). The Act "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *In re Cavanaugh*, 306 F.3d at 732.

Movants are five $JENNER investors who were part of multiple $JENNER-focused Telegram groups formed in the summer of 2024. (Joint Decl. ¶¶ 2-6.) In the aggregate, the group lost approximately $177,361 investing in $JENNER. (*Id.* ¶¶ 11, 14, 17, 20, 23, 25 & Exs. 1-5.) Plaintiffs Azad and Caluseru were part of these groups and were seeking out litigation options when they learned FMF was investigating $JENNER. (*Id.* ¶ 5.) After retaining FMF and filing the Complaint, Mr. Azad—without FMF's prompting—brought the suit and PSLRA notice to the attention of the Jenner Community Voices Telegram group, many of whom then contacted and ultimately retained FMF. (*Id.* ¶ 6.) On December 11, 2024, Mr. Azad created a new Telegram group, titled "Azad v. Jenner," which included these persons and FMF, so that the investors could engage in attorney-client communications *en masse*. Ultimately, the group agreed Movants should move for appointment as Lead Plaintiff. (*Id.*)

Shortly thereafter, on January 6, 2024, FMF created a new Telegram group, comprised of the five Movants and FMF, to facilitate the JCV Group's monitoring and control of the litigation as Lead Plaintiff. (Fitzgerald Decl. ¶ 6.) In the short time since the case has been filed, the JCV Group has already been active in conducting factual investigations, monitoring the status of service on Defendants, and discussing the case schedule and strategy with counsel. (Joint Decl. ¶ 7.) It has also scheduled regular periodic meetings to discuss the case, and reached a consensus on decision-making and conflict resolution procedures. (*Id.* ¶ 8.)

The PSLRA requires a court to "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . ." 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i) (emphasis added); *see also id.* §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I) ("the court shall adopt a presumption that the most adequate plaintiff . . . is the person *or group of persons* that" satisfy certain requirements (emphasis added)). But "[t]he Ninth Circuit has left open the question whether a 'group of persons' may aggregate losses to serve collectively as lead plaintiff." *Flannery v. Snowflake Inc.*, 2024 WL 4008764, at *2 (N.D. Cal. Aug. 29, 2024) (citing *In re Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.'")).

Nevertheless, "[c]onstruing the statute to give preference to the single largest-loss plaintiff over the group of persons with the largest loss would be contrary to the fact that Congress chose to allow groups to be appointed lead plaintiff, which necessarily involves aggregating funds." *Id.* at *3. As a result, many courts "have appointed lead plaintiff groups comprised of individual investors assembled by their lawyers." *Cushman v. Fortress Biotech, Inc.*, 2021 WL 7449182, at *6 (E.D.N.Y. Mar. 24, 2021) (collecting cases in which unrelated investors without preexisting relationships were approved as lead plaintiffs), *report and recommendation aff'd*, 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021). Generally, "[c]ourts approve these lead plaintiff groups upon finding other indicia that demonstrate the group's ability to effectively manage the demands of the litigation." *Id.* (citations omitted); *cf. Water*

*Island Event-Driven Fund*, 2023 WL 8812875, at *4 ("Courts have declined to aggregate losses of a group of individuals when there is no pre-existing relationship between the group members. However, a lack of a pre-existing relationship isn't dispositive, provided the members are able to actively and cohesively represent the class." (internal citations omitted)). "There is 'no set number of members that would qualify as relatively small and therefore presumptively cohesive, but . . . courts appear to generally agree that a group comprising five or fewer members is appropriate.'" *Silverberg v. DryShips Inc.*, 2018 WL 10669653, at *9 (E.D.N.Y. Aug. 21, 2018) (quoting *Brady v. Top Ships Inc.*, 324 F.Supp.3d 335, 347-48 (E.D.N.Y 2018)).

Courts have sometimes been wary of the formation of groups solely to secure lead plaintiff status. *See Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at *1 (C.D. Cal. Jan. 19, 2022) ("The majority of courts in this circuit have refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff."). But "[w]hether or not the PSLRA permits aggregation under such circumstances, the circumstances here are very different." *See Flannery*, 2024 WL 4008764, at *3. "[F]ar from representing an artificial aggregation of losses created solely for the purposes of achieving lead plaintiff status, [the JCV Group] represents a pre-existing and appropriate group of" $JENNER investors. *See id.* (approving the aggregation of losses of an entity "comprised of ***eleven*** constituent legal entities with a clear pre-existing relationship and common counsel" (emphasis added)); *cf. May v. Barclays PLC*, 2023 WL 5950689, at *9 (S.D.N.Y. Sept. 13, 2023) (Finding "no evidence that an otherwise unrelated group 'was cobbled together' for the purpose of creating a large enough grouping of investors to qualify as lead plaintiff" where "until one day before th[e lead counsel] filings, the [plaintiffs'] complaint was the only complaint filed," so that "counsel for [plaintiffs] would not necessarily have known of the need to attract additional group members to have the largest financial interest or have had the time to do so"; where the additional movants "saw [the PLSRA] notice, read the [operative] Complaint, and asked to join" in the suit by "calling [plaintiffs'] law firm"; and where the group entered into an agreement "on the same day the

[competing] Complaint was filed and before the competing motions for appointment as lead plaintiff were filed—that is, before counsel . . . would have known of the specific import of adding additional members to the group.”). Here, given the pre-existing relationship and high degree of group cohesion, aggregating the JCV Group’s losses and appointing the group Lead Plaintiff is appropriate.

**C. Alternatively, Movant Lee Greenfield has the Largest Loss and No Movant Objects to His Appointment as Lead Plaintiff**

If the Court appoints a single lead plaintiff, movant Lee Greenfield has the largest losses among the JCV Group, totaling $40,308.34. (*See* Joint Decl. ¶ 17 & Ex. 3.); *Cf. Water Island Event-Driven Fund*, 2023 WL 8812875, at *4 (where one member of a proposed group “has the largest loss, so it alone qualifies as the presumptive leader . . . the court doesn’t need to address the question of whether aggregation is appropriate” (citing *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (finding shareholder with largest loss within any group was Spear Capital and it “makes no practical difference if Spear Capital chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff”))). The remaining members of the JCV Group understand the Court may elect to appoint a single lead plaintiff. (Joint Decl. ¶ 28.) If that is the case, no Movant—each of whom has interacted with Mr. Greenfield extensively through their various Telegram groups—objects to Mr. Greenfield’s appointment. (*Id.*)

**D. The Jenner Community Voices Group Satisfies Rule 23**

**i. Typicality**

The typicality requirement of Rule 23(a)(3) is satisfied where “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” Fed. R. Civ. P. 23(a)(3). “The test of typicality ‘is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.’” *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)); *see also Menashe v. Biogen Inc.*, 2021 WL 5533455, *3 (C.D.

Cal. Feb. 24, 2021) ("The typicality threshold is satisfied where the proposed lead plaintiff's claims arise from the same conduct from which the other class members' claims and injuries arise." (quoting *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011))).

Here, like all other putative class members, Movants purchased $JENNER tokens on either the Solana or Ethereum blockchain based on Defendants' materially false and misleading statements and omissions. (*See* Joint Decl. ¶¶ 12, 15, 18, 21, 24; Compl. ¶¶ 7, 11-12, 52-72.) Thus, their "claims are typical of those of the absent class members." *See Water Island Event-Driven Fund*, 2023 WL 8812875, at *5; *see also Ramos* Order at 3 ("Like other putative class members, NSHEPP suffered losses when Comerica's share value dropped . . . because of Comerica's allegedly false and or misleading statements. The claims resulting from the alleged conduct and resulting loss satisfy the typicality requirement." (citing *Deora v. NantHealth, Inc.*, 2017 WL 3084161, at *3 (C.D. Cal. May 31, 2017)).

**ii. Adequacy**

A plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This means that the lead plaintiff and its counsel must have no conflicts of interest with other class members and must be willing and able to prosecute the action vigorously on behalf of the class." *Ramos* Order at 3 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)); *accord In re Mersho*, 6 F.4th at 899-900 ("Courts determine whether a plaintiff will adequately represent a class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011))). Thus, "[r]epresentation by a lead plaintiff is 'adequate' when class counsel is qualified and competent to prosecute the action vigorously, and the representatives do not have 'antagonistic or conflicting interests with the unnamed members of the class.'" *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948 at *4 (C.D. Cal. Feb. 29, 2016) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, each member of the JCV Group understands his role and obligation to protect the Class's best interests, and intends to vigorously litigate the claims on behalf of the Class including by participating in discovery and giving deposition and trial testimony. (Joint Decl. ¶¶ 8, 25-27 & Exs. 1-5.) The group has also retained qualified counsel who have already dedicated substantial time and resources to the matter, and who will continue vigorously prosecuting it for the Class. (Fitzgerald Decl. ¶¶ 7-8 & Ex. 3.) And neither the JCV Group nor its counsel have any interests antagonistic to the interests of the rest of the Class. (*Id.*; Joint Decl. ¶ 25.) Accordingly, the JVC Group is an adequate Lead Plaintiff.

**E. Alternatively, Movant Lee Greenfield Satisfies Rule 23**

For the same reasons the JCV Group satisfies the typicality and adequacy requirements, so too does Mr. Greenfield individually. (*See* Joint Decl. ¶¶ 16-18 & Ex. 3.) Notably, Mr. Greenfield suffered losses from both the Solana and Ethereum versions of $JENNER. While this is true of all Movants, it is not true of all $JENNER investors. To the extent discovery reveals Solana and Ethereum $JENNER purchasers are somehow differently situated in a manner that affects their claims, Mr. Greenfield's claims are typical of both potential subclasses. Mr. Greenfield also started the "Top tier whales" and "Jenner Community Voices" Telegram groups and has the confidence of other investors. (*See id.* ¶¶ 3-4, 28.)

**F. The Court Should Appoint FMF Lead Counsel**

The PSLRA provides that, after the Court has appointed a lead plaintiff, it "shall, subject to the approval the court, select and retain counsel to represent the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009). That is because "[s]electing a lawyer in whom a litigant has confidence is an important client prerogative," and a contrary rule would "eviscerate" the PSLRA's "assumption that . . . a properly-selected lead plaintiff is likely to do as good or better job than the court at these tasks." *In re Cavanaugh*, 306 F.3d at 734 & n.14 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3rd Cir. 2001)).

FMF has substantial experience handling complex class action litigation, including having frequently obtained class certification on contested motions in this and other district courts throughout California. *See*, *e.g.*, *Martin v. Monsanto Co.*, 2017 WL 1115167, at *5 (C.D. Cal. Mar. 24, 2017) (Walter, J.) (granting class certification and finding counsel "conducted a significant amount of work in identifying and investigating the claims of the class members, and in preparing this motion for class certification within the 90-day deadline under Local Rule 23-3"); *Testone v. Barleans's Organic Oils, LLC*, 2021 WL 4438391 (S.D. Cal. Sept. 28, 2021); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2021); *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) (Koh, J.[3]). In *Hadley*, FMF subsequently obtained on behalf of the certified class partial summary judgment *against* Kellogg *on liability*, while defeating its summary judgment motion almost entirely. *See Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *17-24 (N.D. Cal. Aug. 13, 2019) (Koh, J.).

FMF's efforts litigating class actions over the last several years have returned tens of millions of dollars to defrauded consumers throughout the United States. *See*, *e.g.*, *Milan v. Clif Bar & Co.*, No. 18-cv-2354-JD (N.D. Cal.), Dkt. No. 261 (July 12, 2024 Order granting preliminary approval to $12 million non-reversionary common fund settlement in consumer fraud class action); *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *6-7 (S.D. Cal. Apr. 8, 2022) (granting final approval to $8 million non-reversionary common fund settlement in consumer fraud class action, finding the settlement "is an excellent result for the nationwide settlement class," and "agree[ing]" that "great skill was required by Class Counsel here" (internal quotation marks and record citation omitted)); *Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021) (Koh, J.) (Granting final approval to $13 million non-reversionary common fund settlement in consumer fraud class action and finding "[t]he[ir] efforts allowed Class Counsel to obtain a significant monetary recovery for the class

[3] The Hon. Lucy H. Koh now sits on the Ninth Circuit Court of Appeals.

as well as injunctive relief that provides health benefits to all purchasers of Defendant's products."); *Krommenhock v. Post Foods, LLC*, 2021 WL 2910205, at *2 (N.D. Cal. June 25, 2021) (granting final approval to $15 million non-reversionary common fund settlement in consumer fraud class action); *Rawa v. Monsanto Co.*, 2018 WL 2389040 (E.D. Mo. May 25, 2018) (Granting final approval to $21.5 million non-reversionary common fund settlement in consumer fraud class action and finding "[t]he Settlement Agreement provides for direct benefits to the class, with class members . . . receiving an amount equal to or in excess of their out-of-pocket loss," and "the percentage of recovery per unit purchased exceed[ing] the amount of recovery in Plaintiffs' expert damages report, and far exceed[ing] Defendant's damages analysis," and that "Monsanto changed its labeling in response to the litigation."), *aff'd* 934 F.3d 862, 870 (8th Cir. 2019) ("The district court decided that a generous award was warranted based on 'the novelty and uncertainty of the claims, the skill required by counsel to perform the work properly, especially on a nationwide basis, time limits imposed in the [California case], the experience and ability of the attorneys, and, significantly, the large amount involved and excellent result achieved.'" (citation omitted)).

Although FMF's experience prosecuting class actions has concentrated on consumer goods fraud, the firm also deals with a variety of other types of cases, including in the cryptocurrency industry. FMF was the first firm to file a class action lawsuit against Silvergate Bank for its role aiding and abetting Samuel Bankman-Fried perpetrate the $8 billion fraud that collapsed the cryptocurrency exchange, FTX. (Fitzgerald Decl. ¶ 9.) Together with co-counsel, FMF recently reached a $10 million settlement with Silvergate shortly before it filed for Chapter 11 bankruptcy. (*Id.*) FMF also brought a similar lawsuit on behalf of an investment fund against Signature Bank, in the Southern District of New York, for its role in the FTX fraud. (*Id.*) Additionally, FMF attorney Peter Grazul has particular experience and expertise in the cryptocurrency industry. (*See id.* Ex. 3 at 3.) Thus, FMF has the experience, skill, and resources necessary to vigorously prosecute this action on behalf of the Class.

**IV. CONCLUSION**

The Court should gran the Motion, appoint the JCV Group Lead Plaintiff, and approve their choice of FMF as Lead Counsel.

Dated: January 17, 2025

Respectfully Submitted,

/s/ Jack Fitzgerald

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110

***Counsel for Plaintiffs***

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.3**

I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

/s/ Jack Fitzgerald
Jack Fitzgerald