JEFFREY L. STEINFELD (SBN 294848)
jlsteinfeld@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Ave.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

*Attorneys for Defendants
Caitlyn Jenner and Sophia Hutchins*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM AZAD and MIHAI CALUSERU, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>CAITLYN JENNER and SOPHIA HUTCHINS,<br><br>Defendants. | **CLASS ACTION**<br><br>**Case No. 2:24-cv-09768**<br><br>**RESPONSE TO MOTION TO APPOINT LEAD PLAINTIFF AND COUNSEL**<br><br>Hon. Stanley Blumenfeld, Jr.<br><br>Courtroom 6C<br><br>Action Filed: November 13, 2024 |

**Response To Motion To Appoint Lead Plaintiff And Counsel**

Plaintiffs Naeem Azad and Mihai Caluseru filed this action on November 13, 2024, alleging, inter alia, claims arising under the federal securities laws. Accordingly, as the parties have stipulated (ECF No. 14), this action is governed by the procedures set forth in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z–1, 78u-4, *et seq*.

In their motion for lead plaintiff (ECF No. 16), Movants Naeem Azad, Mihai Caluseru, Lee Greenfield, Justin Chamley, and Radoslaw Wroblewski (collectively, "Movants") seek appointment as a "group" of lead plaintiffs. ECF No. 16 at 2. However, as Movants seemingly concede, such a group may not collectively serve as lead plaintiff under the PSLRA. *See Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at *1 (C.D. Cal. Jan. 19, 2022) (declining to appoint a group of investors as lead plaintiff and instead considering a single investor to be the movant under the PSLRA).

Indeed, to "allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *5 (S.D. Cal. Feb. 12, 2021) (declining to appoint group of investors). Accordingly, "[t]he majority of courts in this circuit have refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Koffsmon*, 2022 WL 170636, at *1 (collecting cases); *see, e.g.*, *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) ("[C]ourts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals . . . .") (collecting cases); *Crihfield v. CytRx Corp.*, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) (refusing to appoint group of investors despite, as here, a "Joint Declaration averring their intention (1) to monitor the action; (2) to actively oversee the prosecution of the action; and (3) to direct counsel with respect to the litigation").

Here, Movants' purported "pre-existing relationship"—which did not exist before June 2024—is based solely on having purchased the digital assets at issue in this case and

being part of an online Telegram community made up of as many as 200,000 members. *See* ECF No. 16 at 2. That set of facts simply does not meet the standard required to qualify as a lead plaintiff group under the PSLRA. *See Mannkind Sec. Actions*, 2011 WL 13218021, at *3 (C.D. Cal. Apr. 27, 2011) (refusing to appoint group of investors because "the members must have a meaningful relationship preceding the litigation and united by more than the mere happenstance of having bought the same securities").

Worse, it was only Plaintiffs Azad and Caluseru who originally retained Fitzgerald Monroe Flynn PC ("FMF") as counsel. *See* ECF No. 16 at 4. Only after FMF filed this action on November 13, 2024, according to Movants' own representations, did Plaintiff Azad form a "new Telegram group, titled 'Azad v. Jenner'" with FMF, so that FMF could communicate with other unrelated potential plaintiffs. *Id.* Then, just eleven days before filing the lead plaintiff motion, "FMF created [another] new Telegram group," this one "comprised of the five Movants and FMF." *Id.* at 5.

Based on these facts, there can be no doubt that Movants' "group" was cobbled together solely for the purpose of this litigation, and the Court may not appoint them as a group of lead plaintiffs. *See, e.g.*, *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) ("[T]he clear consensus . . . is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses. . . . To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions."); *Mannkind*, 2011 WL 13218021, at *3 (refusing to appoint group of "unrelated investors that have been brought together solely for the purpose of being the lead plaintiff" because "the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation"); *In re Gemstar-TV Guide Int'l*, 209 F.R.D. at 451 (citing to *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308–09 (S.D.N.Y. 2001)) ("refuse[ing] to appoint 'artifice' of four unrelated institutional and individual investors cobbled together by cooperating counsel for the obvious purpose of

creating a large enough grouping of investors to qualify as 'lead plaintiff'").

Further, Movants' in-Circuit authority does not allow the type of grouping Movants seek here. For example, in *Flannery v. Snowflake, Inc.*, the court allowed a group "comprised of five New York City pension systems" and related programs all overseen by the New York City Comptroller, and sharing the same Chief Actuary and auditor, to serve as lead plaintiff. 2024 WL 4008764, at *3 (N.D. Cal. Aug. 29, 2024). In doing so, the court recognized that such circumstances—demonstrating "a clear pre-existing relationship"—"are very different" from here, where individual investors are attempting "an artificial aggregation of losses created solely for the purposes of achieving lead plaintiff status." *Id.* at *3–4.

Likewise, *Water Island Event-Driven Fund v. MaxLinear, Inc.* recognized that courts should "decline[] to aggregate losses of a group of individuals when there is no pre-existing relationship between the group members." 2023 WL 8812875, at *4 (S.D. Cal. Dec. 20, 2023). There, the court allowed institutional investors, two of which served as co-lead plaintiffs in another securities class action, to serve as lead plaintiff because, inter alia, "[i]n enacting the PSLRA, Congress unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors." *Id.* Here, on the contrary, Movants are individual investors with no pre-existing relationship other than purportedly purchasing the same digital asset. This is insufficient to allow grouping under the PSLRA. *See Mannkind*, 2011 WL 13218021, at *3 (refusing to appoint group of investors "united by . . . having bought the same securities").

Finally, for the same reasons that grouping is improper, Movants also fail to satisfy the adequacy requirement of Rule 23(a). *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008) (noting that courts refuse to appoint groups of unrelated individuals as lead plaintiff because "this construction fails to meet the adequacy prong of Rule 23" and is contrary to the PSLRA's legislative intent, where "the analysis and the result are the same" for both); *Alonzo v. Dexcom Inc.*, 2024 WL 5112751, at *6 (S.D. Cal. Dec. 13, 2024) (holding that the proposed lead plaintiff group of unrelated

individuals failed to show adequacy because it "raise[d] the specter" of the group being "brought together by counsel solely for the purpose of aggregating losses in order to surpass the financial interests of any other applicant"); *Wasa Med. Holdings*, 2021 WL 533518, at *5 ("When unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

In submitting this response, Defendants do not concede or comment on the appropriateness of any particular individual as lead plaintiff. Nor do Defendants, other than as described above, concede or comment on the appropriateness of FMF as lead counsel. Defendants expressly maintain (and do not waive) any and all rights, remedies, claims, and/or defenses.

Dated: January 24, 2025                WINSTON & STRAWN LLP

                                       By: /s/ Jeffrey L. Steinfeld
                                           Jeffrey L. Steinfeld

                                       *Attorneys for Defendants
                                       Caitlyn Jenner and Sophia Hutchins*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On January 24, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24, 2025, at Los Angeles, California.

By: /s/ Jeffrey L. Steinfeld
Jeffrey L. Steinfeld