1  Jeffrey L. Steinfeld (SBN: 294848)
   JLSteinfeld@winston.com
2  John E. Schreiber (SBN: 261558)
   JSchreiber@winston.com
3  WINSTON & STRAWN LLP
   333 S. Grand Avenue, 38th Fl.
4  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
5  Facsimile: (213) 615-1750

6  George E. Mastoris (*pro hac vice*)
   GMastoris@winston.com
7  WINSTON & STRAWN LLP
   200 Park Avenue
8  New York, NY 10166-4193
   Telephone: (212) 294-6700
9  Facsimile: (212) 294-4700

10 *Attorneys for Defendants*
   *Caitlyn Jenner and Sophia Hutchins*
11

12            **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 | NAEEM AZAD and MIHAI | Case No. 2:24-cv-09768-SB-JC
16 | CALUSERU, on behalf of themselves, |
   | all others similarly situated, and the | CLASS ACTION
17 | general public, |
   |  | **DEFENDANTS' REPLY**
18 |         Plaintiffs, | **MEMORANDUM IN SUPPORT OF**
   |  | **THE MOTION TO DISMISS**
19 |  | **PLAINTIFF'S FIRST AMENDED**
   |  | **COMPLAINT**
20 |         v. |
   |  | Judge:      Hon. Stanley Blumenfeld, Jr.
21 |  | Date:       May 9, 2025
   |  | Time:       8:30 a.m.
22 | CAITLYN JENNER and SOPHIA | Courtroom:  6C
   | HUTCHINS, | Action Filed: November 13, 2024
23 |         Defendants. |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    Introduction .................................................................................................. 1

II.    $JENNER Memecoins Are Not Securities ....................................................... 1

III.    Plaintiff Fails to Plead a Domestic Transaction ............................................. 4

IV.    Plaintiff Fails to Plead a 10b-5(b) Claim ...................................................... 5

    A.    The AC Fails to Comply with the PSLRA and Rule 9(b) ................... 6

    B.    The AC Fails the Purchaser-Seller Rule ........................................... 6

    C.    Plaintiff Fails to Allege Scienter ....................................................... 7

    D.    Reliance & Loss Causation ................................................................ 7

    E.    No Actionable Misstatement or Omission .......................................... 8

V.    The Section 12 Claims Fail ........................................................................... 12

    A.    Plaintiff Lacks Standing to Bring Section 12 Claims ......................... 12

    B.    Jenner is Not Plaintiff's Statutory Seller ........................................... 13

    C.    No Prospectus ................................................................................... 15

VI.    The State Law Causes of Action Fail ............................................................ 15

    A.    Plaintiff's Section 25401 and 25110 Claims Fail .............................. 15

    B.    The State Common-Law Fraud Claim Fails ....................................... 17

    C.    The Quasi-Contract Claim Fails ....................................................... 17

VII.    Plaintiff's Secondary Liability Claims Against Hutchins Fail ....................... 18

VIII.    Conclusion .................................................................................................. 20

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
   158 Cal. App. 4th 226 (2007).........................................................................16, 20

*Axonic Capital LLC v. Gateway One Lending*,
   2018 WL 11355034 (C.D. Cal. Dec. 18, 2018) ...............................................20

*Barron v. Helbiz, Inc.*,
   2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023) .....................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................3

*Bowden v. Robinson*,
   67 Cal. App. 3d 705 (1977) .............................................................................16

*Bride v. Snap, Inc.*,
   2025 WL 819567 (C.D. Cal. Feb. 21, 2025) ....................................................17

*Bridges v. Geringer*,
   2015 WL 2438227 (N.D. Cal. May 21, 2015) ..................................................13

*Burnett v. Rowzee*,
   561 F. Supp. 2d 1120 (C.D. Cal. 2008)............................................................19

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ....................................................................................19, 20

*Cesario v. Biocept, Inc.*,
   2025 WL 525120 (S.D. Cal. Feb. 18, 2025) .................................................19, 20

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 2003) ..........................................................................1, 10

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
   19 Cal. 4th 1036 (1999).....................................................................................16

*Espy v. J2 Global, Inc.*,
   99 F.4th 527 (9th Cir. 2024)...............................................................................8

*In re Ethereummax Inv. Litig.*,
　2023 WL 6787458 (C.D. Cal. Oct. 3, 2023) ...................................................... 16

*In re Ethereummax Inv. Litig.*,
　2023 WL 6787827 (C.D. Cal. June 6, 2023) ........................................... 11, 16, 20

*In re Finjan Holdings, Inc.*,
　58 F.4th 1048 (9th Cir. 2023) ........................................................................ 7

*Francisco v. Abengoa, S.A.*,
　481 F. Supp. 3d 179 (S.D.N.Y. 2020) ............................................................ 8

*Friel v. Dapper Labs, Inc.*,
　657 F. Supp. 3d 422 (S.D.N.Y. 2023) ............................................................ 3

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
　97 F.4th 1171 (9th Cir. 2024) ...................................................................... 14

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
　594 U.S. 113 (2021) ...................................................................................... 8

*Goldstein v. Exxon Mobil Corp.*,
　2018 WL 5849930 (C.D. Cal. Aug. 13, 2018) ............................................ 6, 8

*In re Gupta Corp. Sec. Litig.*,
　900 F. Supp. 1217 (N.D. Cal. 1994) .......................................................... 18, 19

*Gustafson v. Alloyd Co.*,
　513 U.S. 567 (1995) .................................................................................... 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
　573 U.S. 258 (2014) ...................................................................................... 7

*Harper v. O'Neal*,
　746 F. Supp. 3d 1360 (S.D. Fla. 2024) ........................................................ 14

*Hocking v. Dubois*,
　885 F.2d 1449 (9th Cir. 1989) .................................................................... 12

*In re Homestore.com Sec. Litig.*,
　347 F. Supp. 2d 790 (C.D. Cal. 2004) ........................................................ 18

*Houghton v. Leshner*,
　2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) ............................................ 14

*In re CCIV/Lucid Motors Sec. Litig.*,
    110 F.4th 1181 (9th Cir. 2024) .................................................................... 6

*Jaiyeola v. Rivian*,
    2023 WL 4914977 (N.D. Cal. Aug. 1, 2023) ............................................ 14

*Kairos Inv. Mgmt. Co. v. J.P. Morgan Sec. LLC*,
    2023 WL 9375171 (C.D. Cal. Dec. 11, 2023) .......................................... 10

*King v. Navy Fed. Credit Union*,
    699 F. Supp. 3d 864 (C.D. Cal. 2023) ................................................... 4, 18

*Levine v. Diamanthuset, Inc.*,
    950 F.2d 1478 (9th Cir. 1991) .................................................................. 20

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .................................................................................... 2

*Lyman v. QuinStreet, Inc.*,
    2024 WL 3406992 (N.D. Cal. July 12, 2024) ............................................. 2

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024) .................................................................................... 8

*McCracken v. KSF Acquisition Corp.*,
    2023 WL 5667869 (C.D. Cal. Apr. 4, 2023) ............................................ 17

*McIntyre v. Am. Honda Motor Co.*,
    739 F. Supp. 3d 776 (C.D. Cal. 2024) ..................................................... 17

*Mehedi v. View, Inc.*,
    2023 WL 3592098 (N.D. Cal. May 22, 2023) ..................................... 12, 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................... 6

*Nacarino v. Chobani LLC*,
    668 F. Supp. 3d 881 (N.D. Cal. Feb. 4, 2022) ........................................ 18

*In re Nat'l Golf Props. Sec. Litig.*,
    2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) .................................. 12, 14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 8

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ................................................................ 10

*Patel v. Parnes*,
    253 F.R.D. 531 (C.D. Cal. 2008) ............................................................. 6

*Pegasus Trucking, LLc. v. Asset Redeployment Grp., Inc.*,
    2023 WL 1234879 (C.D. Cal. Feb. 16, 2021) ........................................ 11

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ............................................................................... 13

*Pirani v. Slack Techs., Inc.*,
    127 F.4th 1183 (9th Cir. 2025) .............................................................. 15

*Powell v. Crypto Traders Mgmt., LLC*,
    2024 WL 1330000 (D. Idaho Mar. 28, 2024) ....................................... 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cit. 2012) ................................................................. 18

*In re Ripple Labs, Inc. Litig.*,
    2024 WL 3074379 (N.D. Cal. June 20, 2024) ...................................... 16

*Ryan v. FIGS, Inc.*,
    2025 WL 71727 (C.D. Cal. Jan. 10, 2025) ...................................... 12, 13

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ............................................................... 17

*Samuels v. Lido Dao*,
    2024 WL 4815022 (N.D. Cal. Nov. 18, 2024) ..................................... 14

*SEC v. Balina*,
    2024 WL 2332965 (W.D. Tex. May 22, 2024), *motion to certify*
    *appeal granted*, 2024 WL 4607048 (W.D. Tex. Aug. 16, 2024) ........... 5

*SEC v. Binance Holdings Ltd.*,
    738 F. Supp. 3d 20 (D.D.C. 2024) .......................................................... 3

*SEC v. LBRY, Inc.*,
    639 F. Supp. 3d 211 (D.N.H. 2022) ...................................................... 11

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*SEC v. Payward, Inc.*,
  2024 WL 4511499 (N.D. Cal. 2024) ................................................................12

*SEC v. Seaboard Corp.*,
  677 F.2d 1289 (9th Cir.1982) ...........................................................................16

*SEC v. Telegram Grp. Inc.*,
  448 F. Supp. 3d 352 (S.D.N.Y. 2020) ..........................................................2, 3

*SEC v. Terraform Labs Pte. Ltd.*,
  684 F. Supp. 3d 170 (S.D.N.Y. 2023) ...............................................................3

*SEC v. Trabulse*,
  526 F. Supp. 2d 1008 (N.D. Cal. 2007) .............................................................7

*SEC v. Traffic Monsoon, LLC*,
  245 F. Supp. 3d 1275 (D. Utah 2017) ...............................................................5

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ....................................................................1, 2, 11, 12

*SEC v. Wahi*,
  2024 WL 896148 (W.D. Wash. Mar. 1, 2024) .............................................2, 12

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...........................................................................17

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) .....................................................6, 8, 19

*Stoyas v. Toshiba*,
  896 F.3d 933 (9th Cir. 2018) .............................................................................4

*Su v. Henry Glob. Consulting Grp.*,
  2022 WL 19392 (C.D. Cal. Jan. 3, 2022) ........................................................20

*In re Tezos Sec. Litig.*,
  2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) .....................................................5

*Water Island Event-Driven Fund v. MaxLinear, Inc.*,
  2024 WL 3974758 (S.D. Cal. Aug. 28, 2024) ....................................................6

*Welgus v. TriNet Grp.*,
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ....................................................13

*Williams v. Block one*,
  2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022) ...................................................... 5

**Statutes**

15 U.S.C. §77e ........................................................................................................ 11

15 U.S.C. §77l .................................................................................................*passim*

15 U.S.C. §77l(a)(2) .................................................................................... 13, 15, 19

15 U.S.C. §77o ........................................................................................................ 18

15 U.S.C. §78j ............................................................................................ 12, 14, 19

Cal. Corp. Code §25110 ................................................................................15, 16, 19

Cal. Corp. Code §25401 ................................................................................15, 16, 19

Cal. Corp. Code §25504 ......................................................................................... 20

Cal. Corp. Code §25504.1 ....................................................................................... 20

Cal. Corp. Code §25504.2 ....................................................................................... 20

**Other Authorities**

17 C.F.R. §240.10b-5 ............................................................................................. 20

17 C.F.R. §240.10b-5(b) ........................................................................................... 8

1 Secs. Practice Guide § 4.06 ................................................................................. 15

Fed. R. Civ. P. 8 ....................................................................................................... 5

Fed. R. Civ. P. 9(b) ..................................................................................5, 17, 19, 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 17

## I.    INTRODUCTION

As Defendants' Motion established, Plaintiff's Complaint ("AC") is doomed to fail by its own allegations, which make clear that he knew exactly what he was trying to do when he bought $JENNER—capitalize on an inherently speculative "casino" situation to earn a quick buck from a fundamentally irrational market craze. But the securities laws do not exist to backstop investment decisions, even decisions far more reasonable than the one Plaintiff made here. Rather, they exist to provide redress to purchasers of actual *securities*—not collectibles or "memes"—who can show with specificity that they have been intentionally and materially misled.

Plaintiff is not such a purchaser. Even if he could plausibly allege that his purchase of $JENNER in the secondary market was a securities transaction (he cannot) that took place in the United States (he cannot), he has neither complied with the PSLRA nor adequately pled the elements of any of his causes of action. The Opposition does not even attempt to address most of Defendants' arguments, nor could it. This is precisely the type of case the PSLRA was enacted to weed out, and this Court should dismiss it with prejudice.

## II.    $JENNER MEMECOINS ARE NOT SECURITIES

Plaintiff unsuccessfully attempts to ignore the SEC's Memecoin Statement and the AC's own allegations, which make clear that $JENNER is not a security and does not satisfy *Howey*'s timeworn requirements that an investment contract must involve a "common enterprise" and an "expectation of profits" derived "solely from the efforts of the promoter." *SEC v. W.J. Howey*, 328 U.S. 293, 298–99 (1946).

***First***, Plaintiff has no answer for the express language of the Memecoin Statement, which represents the SEC's view that "a memecoin is not itself a security" because, inter alia, "it does not generate a yield or convey rights to future income, profits, or assets of a business." Sec. & Exch. Comm'n, *Staff Statement on Meme Coins* (Feb. 27, 2025), https://www.sec.gov/newsroom/speechesstatements/staff-statement-meme-coins (the "Memecoin Statement"). Although the guidance is not

binding in and of itself, the Court must "go about its task" informed by "the [SEC's] body of experience and informed judgment," which is "especially informative" because, as here, "it rests on factual premises within the agency's expertise." *Loper Bright v. Raimondo*, 603 U.S. 369, 402 (2024); *see Lyman v. QuinStreet*, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ("the Court accords due respect to the [agency's] interpretation under pre-*Chevron* principles" because the issue is "within the agency's expertise" and it is "especially informative and particularly persuasive").

Plaintiff quibbles with the statement's customary legal disclaimers, yet ignores the fact that the Framework—on which he relies—contains those same disclaimers, says nothing about memecoins, and is six years old.[1] The AC admits that memecoins "lack true value or utility" (AC ¶47) and nowhere specifies how $JENNER offered purchasers a share in an enterprise or future income stream, both hallmarks of what federal law (and the SEC) defines as a security. That alone is dispositive.

**Second**, the Memecoin Statement's conclusions arise from and are consistent with the traditional application of *Howey* and its progeny. Plaintiff initially suggests that vertical commonality exists because Defendants allegedly owned a "substantial amount of $JENNER." Opp. at 6. But none of the cases Plaintiff cites (all of which predate the Memecoin Statement) stands for the proposition that continued ownership of the token by the original issuer is sufficient. To the contrary, the tokens in those cases granted their holders something of independent value—whether a right to collect certain cashback payments or some ability to use and access the token's blockchain ecosystem. Opp. at 6. Here, as Plaintiff admits, "there is no consumptive or utilitarian use case for $JENNER" (AC ¶82(j)) and "investors could do nothing with $JENNER other than trade it online" (Opp. at 6).

The notion that vertical commonality might exist is also doomed by Plaintiff's admissions that Defendants essentially cannibalized the original $JENNER

---

[1] Notwithstanding Plaintiff's attempt to draw a false parallel, the same deference is not due the statements of individual commissioners.

memecoin by launching competing tokens within days and separately charging a 3% tax on transactions, thus further delinking its price from Defendants' own goals (and profits). Tellingly, Plaintiff never responds to this point or any of the supporting caselaw cited by Defendants in their opening brief. *See* Mot. at 7 (collecting cases). Nor can Plaintiff use the transaction charge as evidence of *horizontal* commonality. As Plaintiff acknowledges, that standard is only met where "the fortunes of each investor depend upon the profitability of the enterprise as a whole." Opp. at 7. But although the AC refers in conclusory fashion to an "enterprise" and a "project," it alleges no actual *facts* about what that enterprise was, who was involved, what actions it undertook, or whether and how those actions were causally linked to investors' fortunes. That is not enough under federal pleading standards. *See Bell v. Twombly*, 550 U.S. 544, 555 (2007) ("requir[ing] more than labels and conclusions").

**Third**, Plaintiff has also failed to plead a reasonable expectation of profits derived "solely" from Defendants' efforts. Despite *De Luz Ranchos* (which is still good law), Plaintiff harps on the notion that an investment contract need not be an *actual* contract. Opp. at 8. Even were that true, courts have been loath to find that a given asset constitutes an investment contract where the issuer has no ongoing obligations—contractual, fiduciary, or otherwise—to the asset's holder. Indeed, Plaintiff's cases distinguish those tokens (which had some utility, were purchased directly from issuer, or both) from the scenario here, where there are no such allegations and Plaintiff admits he bought $JENNER on the secondary market.[2]

Nor does Plaintiff have any real answer to the long line of cases holding that

---

[2] *See, e.g.*, *SEC v. Binance*, 738 F. Supp. 3d 20, 54 (D.D.C. June 28, 2024) (agreeing with *Ripple* that secondary sales do not inherently constitute securities transactions); *SEC v. Terraform*, 684 F. Supp. 3d 170, 194 (S.D.N.Y. July 31, 2023) ("the tokens, if taken by themselves, might not qualify as investment contracts"); *SEC v. Telegram*, 448 F. Supp. 3d 352, 358 (S.D.N.Y. Mar. 24, 2020) ("an investment of money in a cryptocurrency utilized by members of a decentralized community connected via blockchain technology … is not likely to be deemed a security"); *Friel v. Dapper*, 657 F. Supp. 3d 422, 447 (S.D.N.Y. Feb. 22, 2023) (finding that sales of NFTs were securities because, unlike here, the issuer created and controlled a self-contained "marketplace" for the NFTs).

3

where the realization of profits "depends significantly on the post-investment operation of market forces," it cannot satisfy *Howey*'s third prong. Mot. at 8 (collecting cases). Plaintiff skirts his own admissions that the value of $JENNER is driven by "emotion," "humor," and "network" and "bandwagon" effects (AC ¶40) by suggesting that Jenner's promotional statements can somehow bridge the lack of any alleged causal relationship between the issuance of the coin and its traded value (Opp. at 10). But he ignores the requirement that investors' profit expectations must be "reasonable" ones: where, as here, a promoter's efforts are limited to "hyping the meme coin on social media" and listing it on a crypto platform, that "reasonableness" does not exist. Memecoin Statement at 9. As the Opposition makes clear, this prong involves an "objective inquiry," which is *only* satisfied when the issuer engages in "essential managerial efforts which affect the failure or success of the enterprise." Opp. at 8 (cleaned up). The AC has no such allegation. Dismissal is appropriate.

## III. PLAINTIFF FAILS TO PLEAD A DOMESTIC TRANSACTION

Plaintiff's claims also fail because the federal securities laws do not apply extraterritorially. Plaintiff concedes that he must "alleg[e] that the purchaser … or [] the seller incurred irrevocable liability **within the United States**…." Opp. at 16 quoting *Stoyas v. Toshiba*, 896 F.3d 933, 948 (9th Cir. 2018). But the AC lacks key factual allegations that could support such a conclusion, including any "factual allegations concerning contract formation, placement of purchase orders, passing of title, and the exchange of money." *See id*. Indeed, the only "facts" in the AC are that Plaintiff is a U.K. citizen (AC ¶11); the Solana token was issued by Pump.Fun, a **foreign** entity run by "individuals located **outside of the United States**" (*id*. ¶¶45–49); and that the ERC token traded only on "minor **foreign**" exchanges (*id*. ¶82(i)).

Plaintiff attempts to get past this dispositive pleading failure by relying on unpled "factors" that he claims demonstrate the domestic nature of his transactions: that the blockchains at issue "have significant U.S. ties," including through their "node validation network"; that Solana is "based in San Francisco"; and that

"Uniswap is a U.S. software company." Opp. at 17. Because these "factors" are not mentioned in the AC, they cannot be considered. *See* RJN Opp. (collecting cases); *King v. Navy*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023) ("Plaintiff may not amend … through facts raised in opposition to a motion to dismiss.").

Moreover, none of these "factors" speak to Plaintiff's transactions in $JENNER itself. Plaintiff concedes that he did not purchase directly from Jenner (Opp. at 11, 28), meaning that Jenner could not have incurred irrevocable liability within the U.S. to deliver a security to Plaintiff. And Plaintiff never alleges he was in the U.S. when he made the purchase. That is the end of the story.

Plaintiff's own authority underscores the AC's pleading failures. For instance, in *In re Tezos*, the plaintiff was a U.S. resident who learned of the project in the U.S. through marketing "almost exclusively target[ing]" U.S. residents; he participated in the transaction from the U.S. using a website that was hosted in the U.S. and run by a U.S. defendant; and the nodes in question were "clustered more densely in the U.S." 2018 WL 4293341, at *3, 8 (N.D. Cal. Aug. 7, 2018). Likewise, in *Barron v. Helbiz*, the court rejected the relevance of U.S. marketing efforts or computer servers, holding that the "only allegation that [was] sufficient to support an inference of domesticity" was that the plaintiffs were both "American residents" *and* "purchased [the token] in the United States." 2023 WL 5672640, at *7 (S.D.N.Y. Sept. 1, 2023). These sorts of allegations are completely absent here.[3]

## IV. PLAINTIFF FAILS TO PLEAD A 10B-5(b) CLAIM

As demonstrated in Defendants' Motion, the 10b-5 claim fails because the AC

---

[3] Plaintiff's scant remaining authority is also inapposite. *See Williams v. Block one*, 2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022) (denying certification of settlement class despite densely-clustered U.S. nodes, U.S. citizenship of lead plaintiff, and domestic purchases by lead plaintiff, because plaintiff failed to show what proportion of the class's purchases were domestic); *SEC v. Traffic Monsoon*, 245 F. Supp. 3d 1275 (D. Utah 2017) (alleging direct privity and no secondary market transactions between purchasers and defendant); *SEC v. Balina*, 2024 WL 2332965, at *6 (W.D. Tex. May 22, 2024), *motion to certify appeal granted*, 2024 WL 4607048 (W.D. Tex. Aug. 16, 2024) (holding, in a case certified for interlocutory appeal, that the SEC could bring an enforcement action as to U.S. purchasers).

1    does not comply with the PSLRA and does not adequately plead a materially false or

2    misleading statement, scienter, reliance, or loss causation. Mot. at 11–26.

3    **A.    The AC Fails to Comply with the PSLRA and Rule 9(b)**

4    The AC is a paradigmatic "shotgun" pleading that does not comply with Rule

5    8, let alone the heightened pleading standards of Rule 9(b) and the PSLRA. Mot. at

6    12–14. Plaintiff concedes that the PSLRA requires that "a plaintiff 'specify each

7    statement alleged to have been misleading [and] the reason or reasons why the

8    statement is misleading.'" Opp. at 21 (quoting *Metzler v. Corinthian*, 540 F.3d 1049,

9    1070 (9th Cir. 2008)). Its identification of false statements must "be clear and concise"

10   and "identify some facts suggesting that the statement is false or misleading, …

11   preferably in the same [paragraph] or a paragraph following the statement." *Patel v.*

12   *Parnes*, 253 F.R.D. 531, 554 (C.D. Cal. 2008). But the AC, a morass of screenshotted

13   tweets spanning nearly 40 pages, with no explanation of which statements are alleged

14   to be false or why (let alone in the "paragraph following")—comes nowhere close.

15   *See Metzler*, 540 F.3d at 1071–72. Moreover, Plaintiff "did not address this argument

16   in [his] opposition" and the Court must "deem[] [the] lack of opposition to constitute

17   waiver." *Goldstein v. Exxon*, 2018 WL 5849930, at *2 (C.D. Cal. Aug. 13, 2018).

18   **B.    The AC Fails the Purchaser-Seller Rule**

19   The AC also fails the Ninth Circuit's "bright-line rule that the ***'security' at issue***

20   ***must be one about which the alleged misrepresentations were made*.**" *Water Island*

21   *v. MaxLinear*, 2024 WL 3974758, at *5 (S.D. Cal. Aug. 28, 2024) (citing *In re CCIV*,

22   110 F.4th 1181, 1185–86 (9th Cir. 2024)). Here, Plaintiff purportedly purchased two

23   distinct "securities" (Solana and ERC tokens) and relies on statements regarding a

24   third ($BBARK). AC ¶¶55–57. Yet the AC makes no attempt to distinguish which

25   statements support liability for which "securities." And once again, Plaintiff

26   completely fails to address Defendants' arguments and binding Ninth Circuit law

27   (Mot. at 14), waiving any argument on this score. *See, e.g.*, *Stichting v. Countrywide*,

28   802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). The Court should dismiss.

### C.    Plaintiff Fails to Allege Scienter

Even if the AC adequately alleged any actionable misstatement (it doesn't), Plaintiff's 10b-5 claim would still be subject to dismissal for failure to identify "with particularity facts giving rise to a *strong* inference that" Jenner acted with "an intent to deceive, manipulate, or defraud," which is "an exacting pleading obligation that presents no small hurdle for the securities fraud plaintiff." *In re Finjan*, 58 F.4th 1048, 1058 (9th Cir. 2023). Plaintiff devotes just a single paragraph to defending his scienter allegations (or lack thereof) (Opp. at 24), and the sole paragraph of the AC devoted to scienter (AC ¶60) merely alleges that Jenner entered into a "Non-Binding Term Sheet" to "generate maximum revenue." This does not establish an intent to deceive, manipulate, or defraud. Plaintiff ignores the plethora of cases holding that having a financial interest in the offering/token does not support scienter. Mot. at 23.

Instead, Plaintiff simply—and misleadingly—inserts Jenner's name into legal conclusions from *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1014 (N.D. Cal. 2007). *See* Opp. at 24. But *Trabulse* is grossly inapposite. There, defendant reported that "the value of the fund … totaled approximately $50 million" despite receiving "bank statements" that "show[ed] … the fund's value was only approximately $10 million," and he allegedly used investor funds "to pay for personal and unauthorized expenses," including mislabeled transfers to his wife and daughter. 526 F. Supp. 2d at 1011, 1014. No such allegations exist here, and Plaintiff's attempt to piggyback off of *Trabulse* is improper and must be rejected.

### D.    Reliance & Loss Causation

Plaintiff also failed to plead the separate elements of reliance and loss causation. Mot. at 24–26. Tellingly, the Opposition does not meaningfully engage on these issues. Opp. at 24–25. With respect to reliance, Plaintiff's sole retort is the conclusory statement that "had it not been for Jenner's false and misleading statements and omissions, Plaintiff would not have invested in, nor held $JENNER." *Id.* at 24. But Plaintiff does not contest that he purchased the Solana token ***after*** the "revelation" of

1   Sahil Arora's purported scheme (Mot. at 24–25) and the ERC token *after* the 3%

2   "tax" was fully disclosed (*id*. at 26 n.8). Nor does Plaintiff address the binding

3   authority demonstrating his failure to plead reliance. *Halliburton v. Erica*, 573 U.S.

4   258, 278 (2014) (because plaintiff "did not buy or sell the [security] … *before the*

5   *truth was revealed*…*he could not be said to have acted in reliance* on a fraud-tainted

6   price"); *In re Omnivision*, 559 F. Supp. 2d 1036, 1044–45 (N.D. Cal. 2008) (plaintiff

7   "purchased … stock *after* the corrective disclosure and therefore *cannot have*

8   *reasonably relied*" on the alleged misstatements).[4]

9        The same is true of loss causation. Plaintiff's only response is that he "was

10  forced to sell his holdings at a loss, when it became apparent $JENNER would never

11  recover after Jenner's misrepresentations and omissions came to light when she

12  abruptly abandoned the project." Opp. at 25 (citing AC ¶95). But loss causation

13  requires a plaintiff to "allege *with particularity* facts plausibly suggesting that a

14  corrective disclosure revealed, in whole or in part, the truth concealed by the

15  defendant's misstatements, and *that disclosure caused the … stock price to decline*."

16  *Espy v. J2*, 99 F.4th 527, 540 (9th Cir. 2024). The corrective disclosure must match

17  the purported statement in both content and level of specificity to support loss

18  causation. *Goldman v. Ark. Tchr.*, 594 U.S. 113, 123 (2021). Here, it does not.

19        **E.    No Actionable Misstatement or Omission**

20        As the Motion demonstrates, the AC fails to identify any actionable

21  misstatements or omissions (Mot. at 12–22; Ex. A), thus compelling dismissal.

22        **Omissions.** Despite the Supreme Court's unequivocal holding that "[p]ure

23  omissions are not actionable under Rule 10b-5(b)" because the securities laws "do

24  not create an affirmative duty to disclose any and all material information"

25  _____

26  [4] For the same reasons, Plaintiff also lacks standing. *See Omnivision*, 559 F. Supp.
    2d at 1044 (because plaintiff purchased after the corrective disclosure, he "did not
    suffer any injury" and "lacks standing"); *Francisco v. Abengoa*, 481 F. Supp. 3d 179,

27  206–07 (S.D.N.Y. 2020) (plaintiffs lacked standing because they purchased after
    corrective disclosures). Plaintiff's failure to address this issue results in waiver. *See*

28  *Goldstein*, 2018 WL 5849930, at *2; *Stichting*, 802 F. Supp. 2d at 1132.

(*Macquarie v. Moab*, 601 U.S. 257, 260, 264 (2024)), Plaintiff improperly continues to proffer a pure omission theory of liability (Opp. at 23), citing decades-old cases that, to the extent they involve omission liability, are no longer good law. *Id.*

**Misstatements**. As detailed previously, the AC does not specify the statements Plaintiff claims are misleading or why. In his Opposition, Plaintiff now suggests that his claim is based on Jenner's purported representations that "she was dedicated to the 'long term' development of $JENNER," and that her "celebrity status" would support "the project indefinitely." Opp. at 21–22, citing AC ¶¶ 52, 68, 82(e), 82(f), 84(b), 128–29. Not only are such "statements" inactionable, but Plaintiff mischaracterizes what was actually said.[5] The actual statements were:

- <u>May 26</u>: "We will be solely focused on $Jenner and expect to hit $50m market cap on the first 24 hours." AC ¶52.
- <u>Undated Jenner X (Twitter) Landing Page</u>: "It's a marathon, not a sprint … The official $JENNER token on $ETH." AC ¶68.
- <u>June 3</u>: "Never give up on a $Jenner hahaha I've been doing this for 50 years –I've got nothing but stamina!  Let's go fam! … Marathon not a sprint. Only official $Jenner is on $ETH … I am working triple time not just on the $ETH coin but on all aspects for the entire $Jenner community." AC ¶82(e).
- <u>June 9</u>: "It's always a good day to be a $Jenner…but only if you're on $ETH." *Id.*(f).
- <u>July 28</u>: "It's a fun day to be a $Jenner trader." *Id.*
- <u>Sept. 3</u>: "@jennercoineth is my only official meme coin." AC ¶84(b).

These statements cannot give rise to a claim because they are not false and/or are quintessential puffery. The first statement regarding Jenner's expectations for the first 24 hours of trading (AC ¶52) was not only a non-actionable opinion, but it was spot on. *See* AC ¶54 ("$JENNER astonishingly amassed over $250 million in trading volume … ultimately leading to a $43 million market capitalization … its first day."). Likewise, statements regarding the "official" $JENNER token being on ETH (*id.* ¶¶ 68, 82(e), 82(f), 84(b)), all of which occurred after Arora's "scam," are not alleged to be false. And the statements "[i]t's a marathon, not a sprint," "[i]t's always a good

---

[5] Indeed, AC ¶¶128–29 are Plaintiff's legal conclusions, not Jenner's statements.

day to be a $Jenner," and "[i]t's a fun to be a $Jenner trader," are non-actionable as they are not subject to verification and/or are puffery and opinion. *See* Mot. 17–19.

The other two paragraphs the Opposition cites purportedly concern "the allocation of the tax revenue." Opp. at 22; AC ¶¶ 82(i), 84(j). The statements are:

- <u>June 16</u>: "With our first CEX (signed by both sides) announcement incoming & on a CEX that never listed the fraud SOL token – we are feeling more and more excited to share the news with you. This will be a major week for our community! We are $Jenner / $ETH strong! Happy Fathers Day!" AC ¶82(i).[6]

- <u>May 29</u>: "When $Jenner on $ETH hits $50m market cap we will donate to @realDonladTrump from the tax revenues!" AC ¶84(j).

- <u>June 24</u>: "Not all taxes going for Trump. The first distribution would be made when we hit 50m MC. And never said it would be ALL of them. Some have been used for buybacks, marketing, etc." *Id.*

- <u>May 31</u>: "We use tax proceeds as giveaways (like MAGA when we hit 50m mc) and LP. Giveaways are for causes I and our $Jenner $ETH community truly believe in. As market cap and trading volume goes up we plan to reduce taxes … We hear you."

None of these statements are false, nor are they alleged to be. First, the June 16 statement regarding the ERC token's "first CEX" listing (AC ¶82(i)) was true. Indeed, in the same paragraph, Plaintiff admits that Jenner "was able to get $JENNER listed" on "foreign CEXs," such as "MEXC" (*id.*), unlike the Solana token. Likewise, the other statements regarding a "tax" donation to Donald Trump were all contingent on the ERC token achieving a "$50m market cap," which it never did, nor does Plaintiff so allege. Finally, "We are $Jenner / $ETH strong!" is the same type of non-actionable puffing/opinion statement as the first category of purported misstatements. *See Coastal v. First Am.*, 173 F.3d 725, 731 (9th Cir. 2003) (cited in Opp. at 25).

Plaintiff never addresses *any* of the cases demonstrating that the statements above are inactionable. And the precedent cited by Plaintiff supports Defendants' positions and/or is readily distinguishable. *Oregon v. Apollo*, for instance, affirmed dismissal because defendant's statements, like Jenner's, were puffery and/or

---

[6] Contrary to Plaintiff's assertion (Opp. at 22), there is nothing in ¶82(i) suggesting that transaction fees would be used to list the coin on certain exchanges.

opinions. 774 F.3d 598, 606–10 (9th Cir. 2014). *Kairos v. J.P. Morgan* held that the absence of allegations showing that the defendant did not "honestly believe" a statement of opinion dispositively renders the statement non-actionable. 2023 WL 9375171, at *4 (C.D. Cal. Dec. 11, 2023). There are no such allegations here, either.

Plaintiff's reliance on *In re Ethereummax*, 2023 WL 6787827 (C.D. Cal. June 6, 2023), is also misplaced. The court allowed that case to proceed where the defendant claimed it was "invested" for the "long haul," conveying a "sense of permanency longer than a few days," but then turned around and sold 9.7 trillion tokens just three days later. *Id.* at *32–33. But here, there are no allegations of Jenner selling **any** of her tokens, let alone just a "few days" after making her statements, or otherwise demonstrating that Jenner's investment activity was inconsistent with her optimism or long-term hopes for the project. The best Plaintiff can muster is that Jenner allegedly stopped "marketing efforts" **three months** later. AC ¶84(b).

Likewise, *Powell v. Crypto Traders* involved false representations by a defendant directly to certain investors to "induce" them into depositing money into a "Crypto Fund," which defendant managed. 2024 WL 1330000, at *11 (D. Idaho Mar. 28, 2024). Defendant promised the funds would be "invested in a digital asset portfolio" with "monthly Earnings Updates" and that investors "could withdraw their deposit at any time." *Id.* Instead, the defendant "misappropriated investor funds and instead used those funds to cover personal expenses … and to make Ponzi-like payments to previous investors." *Id.* Defendant also did not provide earning reports and refused to allow investors to withdraw their money. *Id.* at *11–12. Here, by contrast, there was no common fund, investors received the $JENNER they sought to buy, and there are no allegations that Jenner was using fees for improper purposes.

The remainder of Plaintiff's cited case law is also inapposite. *SEC v. LBRY* is a Section 5 case dealing solely with the *Howey* test. 639 F. Supp. 3d 211, 220 (D.N.H. 2022). And *Pegasus v. Asset* is a common law fraud case involving "the sale of [] equipment" premised on "specific promises" regarding "the quality and value of the

equipment" that were false. 2023 WL 1234879, at *6 (C.D. Cal. Feb. 16, 2021).

Finally, Plaintiff admits that many of the statements at issue are forward-looking (Opp. at 27), but claims that the cautionary language on the $JENNER website is insufficient to immunize them. But the disclosure directly rebuts the AC's allegation that $JENNER would "increase continuously and exponentially in value" (AC ¶91) by stating that the "project developers and founders make no guarantees or promises regarding the token's value or performance." Steinfeld Decl. ¶2, Ex. B. And the conclusory allegation that "Jenner made false statements … which were known to be false" (AC ¶¶ 90, 127) cannot overcome the PSLRA's safe harbor. Mot. at 21.

## V.    THE SECTION 12 CLAIMS FAIL

Plaintiff's Section 12 claims fail because (i) Plaintiff lacks standing; (ii) Jenner is not Plaintiff's statutory seller; and (iii) the issuance wasn't pursuant to a prospectus.

### A.    Plaintiff Lacks Standing to Bring Section 12 Claims

Plaintiff concedes that he only "purchased $JENNER on a secondary market," not in the public offering at issue. Opp. at 11; *id.* ("investors [] use[d] secondary markets … to purchase $JENNER"); AC, Ex. 1 at 3–5 (certifying only secondary purchases). Accordingly, the Court must "dismiss the Section 12 claim for lack of statutory standing." *Mehedi v. View*, 2023 WL 3592098, at *11 (N.D. Cal. May 22, 2023); *see also Ryan v. FIGS*, 2025 WL 71727, at *11 (C.D. Cal. Jan. 10, 2025) (dismissing because a "suit under Section 12 may only be maintained by a person who purchased the stock in the offering," not the secondary market).

Unsurprisingly, Plaintiff has no response to this authority. Instead, he attempts to confuse the issue by relying on *Hocking*, *Payward*, and *Wahi*, which concern only the threshold issue of whether a secondary transaction can qualify as a security transaction under *Howey*, not the scope of Section 12 standing.[7]  Plaintiff points to

---

[7] *See Hocking v. Dubois*, 885 F.2d 1449 (9th Cir. 1989) (10b-5 case analyzing real estate purchases under *Howey* to determine if they were securities); *SEC v. Payward*, 2024 WL 4511499 (N.D. Cal. 2024) (enforcement action with no Section 12 claim, (continued…)

no authority for his position; to the contrary, the cases he cites provide that Section 12 is "not applicable to secondary sales made in the open market." *In re Nat'l Golf*, 2003 WL 23018761, at *4 (C.D. Cal. Mar. 19, 2003) (Opp. at 16). Plaintiff cannot plead around this fatal issue; the Court should dismiss with prejudice.[8]

## B.    Jenner Is Not Plaintiff's Statutory Seller

The Court should also dismiss the Section 12 claims because the AC does not adequately plead that Jenner was a statutory seller. Plaintiff concedes that Jenner was not his "immediate seller" (Opp. at 11, 28) and thus relies solely on the "solicitation" prong of the Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622, 644 n.21, 647 (1988). But this prong requires successful solicitation motivated by a desire to serve one's own financial interests. *Id.* To satisfy this prong, Plaintiff must plead facts establishing that Jenner's purported "solicitation" was: (i) used to "persuade[] [Plaintiff] to purchase securities," and (ii) "directed at producing the sale." *See id.* at 646–47. Jenner being a "substantial factor in causing the transaction to take place" is insufficient (*id.* at 649–50); rather, the solicitation must "'urge or persuade' [Plaintiff] to buy [$JENNER]." *Ryan*, 2025 WL 71727, at *12.

The AC comes nowhere close to satisfying these requirements. As detailed in the Motion, the AC's generic assertion that Jenner "solicited Lead Plaintiff … to purchase $Jenner" (AC ¶87) fails as a matter of law. *Welgus v. TriNet*, 2017 WL 167708, at *23 (N.D. Cal. Jan. 17, 2017) (such "conclusory" allegations are "inadequate"); *Bridges v. Geringer*, 2015 WL 2438227, at *4 (N.D. Cal. May 21, 2015) (that defendants "solicit[ed] Plaintiff's investments" "will not suffice").

In response, Plaintiff cites to just a single paragraph of the AC (¶82(f)(h)(i)).

---

analyzing whether certain cryptocurrency transactions "constitute investment contracts"); *SEC v. Wahi*, 2024 WL 896148 (W.D. Wash. Mar. 1, 2024) (default judgment in insider trading enforcement action brought under Section 10(b)).
[8] Plaintiff half-heartedly attempts to distinguish *Welgus*, *Ryan*, *Mehedi*, *Hertzberg*, *CytRx*, *Cullen*, and *Century Aluminum* (Mot. at 26–27) by noting they involve, inter alia, Section 12(a)(2). But Plaintiff also brings a 12(a)(2) claim (Count 2), and he cites no authority for why such authority should not apply to both claims.

1    Opp. at 16. But ¶82 parrots the now-defunct 2019 SEC Framework, barely speaking

2    to Jenner's purported actions. The AC alleges that Jenner "promote[d] $JENNER as

3    a memecoin," "marketed her memecoin as a 'fun' investment," "emphasized the

4    potential for $JENNER to increase in value," and "told investors she would obtain

5    listings for the Ethereum-based $JENNER." *Id.*[9] These allegations, which at most

6    would make Jenner a "substantial factor," do not satisfy the solicitation prong.

7          Plaintiff's authority demonstrates the vast gulf between Jenner's alleged

8    promotional activities and conduct constituting a Section 12 solicitation to purchase.

9    Each of those cases involves defendants urging plaintiffs to ***purchase*** the security so

10   they could ***participate in the governance*** of the project—allegations that are

11   completely absent here. For example, in *Samuels v. Lido*, defendant "encouraged

12   people to participate in Lido governance, which requires them to purchase LDO."

13   2024 WL 4815022, at *11 (N.D. Cal. Nov. 18, 2024). Likewise, in *Houghton v.*

14   *Leshner*, plaintiff alleged that defendants affirmatively "encourage[d] investors to

15   purchase [the token] and play a role in governance" so that investors could

16   "participate in shaping the direction of" the company. 2023 WL 6826814, at *3, 5

17   (N.D. Cal. Sept. 20, 2023). And in *Harper v. O'Neal* (an out-of-circuit case), plaintiff

18   alleged defendant solicited purchases of a "governance token," giving "holders the

19   right to participate in the decision-making process," and "interacted directly with

20   [investors] on a daily basis." 746 F. Supp. 3d 1360, 1365–69 (S.D. Fla. 2024).[10]

21         Separately, as detailed in the Motion, Plaintiff also failed to satisfy the

22   "financial interest" requirement of solicitation for the Solana token. The AC is devoid

23   _____

[9] The Opposition argues that Jenner "created the initial liquidity pool for the tokens,"
but this allegation is not in the cited paragraphs. Opp. at 16. In other places, the AC
concedes that Pump.Fun and/or Sahil Arora—not Jenner—provided the liquidity.
*See, e.g.*, AC ¶¶46, 61. These admissions are "conclusively binding" on Plaintiff. *See
Jaiyeola v. Rivian*, 2023 WL 4914977, at *4 (N.D. Cal. Aug. 1, 2023).

[10] Plaintiff's remaining authority is also inapposite. *In re Genius Brands*, 97 F.4th
1171, 1182 (9th Cir. 2024), is a Section 10(b) case, and in any event involved paid
articles "urg[ing]" readers to "purchase[]" a third party's stock. *In re Nat'l Golf*, 2003
WL 23018761, at *3 (C.D. Cal. Mar. 19, 2003), found that "sign[ing] the prospectus"
for the sale of a company's securities constituted solicitation.

of factual allegations that Jenner stood to gain financially from Plaintiff's purchase of Solana. Plaintiff appears to rely exclusively on a "***Non-Binding Term Sheet***" that Plaintiff generically asserts created a financial interest for her. Opp. at 15 citing AC ¶60. But the AC contains no allegations concerning how Jenner's purported solicitation of Plaintiff's purchase would result in a financial gain.

### C.    No Prospectus

Plaintiff's Section 12(a)(2) claim fails for the additional reason that $JENNER was not issued "by means of a prospectus." 15 U.S.C. §77l(a)(2). "Liability under section 12(a)(2) can be based only on the sale of" a security "sold by means of a prospectus" in a "registered … public offering." *Pirani v. Slack*, 127 F.4th 1183, 1192 (9th Cir. 2025). It is undisputed that $JENNER was not sold "by such means"; therefore, Plaintiff "has not stated a claim" under Section 12(a)(2). *Id.* at 1191, 1194.

Plaintiff completely ignores *Slack*—binding authority on this Court—and instead argues that "oral communications" untethered to a prospectus can give rise to Section 12 liability. Not so. *Slack* rejected this very argument, holding that the Supreme Court has unequivocally provided "that the phrase 'oral communication' is restricted to oral communications ***that relate to a prospectus***." *Id.* (quoting *Gustafson v. Alloyd*, 513 U.S. 567–68 (1995)). Unsurprisingly, then, Plaintiff's citations to 1 Secs. Practice Guide § 4.06 (defining a "written communication") and *Pino* (defining "solicitation") are irrelevant because they say nothing about the application of Section 12(a)(2) to communications untethered to a prospectus. *See* Opp. at 20.

## VI.  THE STATE LAW CAUSES OF ACTION FAIL

Plaintiff's state-law claims fail for additional independent reasons. Mot. 29–32.

### A.    Plaintiff's Section 25401 and 25110 Claims Fail

Plaintiff's statutory claims brought under Cal. Corp. Code §§25401 and 25110 fail for two additional reasons: Plaintiff does not (and cannot) plead that (i) his purchases occurred in California and (ii) he was in direct privity with Jenner. Mot. at 30–31. Rather, Plaintiff half-heartedly cross references his argument with respect to

Section 12's statutory seller requirement. Opp. at 28 (arguing state law claims survive "[f]or the same reasons described in Section I(B) above"). But Plaintiff ignores black-letter law providing that California's statutory requirements are even stricter and narrower than their federal counterparts (which he also fails to plead).

**Plaintiff Was Not in Privity with Jenner**. California requires *direct privity* between purchaser and seller—there is no "solicitation" liability. *Apollo v. Roth*, 158 Cal. App. 4th 226, 254 (2007) (liability "attaches *only to the actual seller* of the securities"; rejecting the broader, federal theory); *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (1977) (requiring privity between plaintiff and "immediate" seller); *SEC v. Seaboard*, 677 F.2d 1289, 1296 (9th Cir.1982) (liability "limited to actual sellers" and defendant "was not the literal seller, as required by" California law). Indeed, *Apollo* rejected the exact argument Plaintiff puts forth, holding that the "argument runs aground because California's statute, while modeled on federal law, is not, on the matter of statutory seller status, 'substantially identical' to federal law." 158 Cal. App. 4th at 253–54 (rejecting that liability "attaches to one who actively solicits").[11]

**Plaintiff Did Not Purchase in California**. Plaintiff does not plead that he transacted in California. This is dispositive. *Diamond. v. Superior Ct.*, 19 Cal. 4th 1036, 1053 (1999) (§§25401 and 25110 "expressly limited" to transactions "in this state"). Plaintiff cites no authority for his argument that California's securities laws apply to out-of-state transactions. Plaintiff's reliance on his judicial notice request is improper as discussed above, and, in any event, says nothing of what occurred in California (as compared to the country generally). Plaintiff does not argue he can amend around these pleading failures, so the Court should dismiss with prejudice.

---

[11] The Opposition's lone citation to *Ethereummax* is unavailing because it ultimately dismissed California securities claims, despite, unlike here, plaintiffs alleging that they "purchased Tokens from Defendants." 2023 WL 6787827, at *8. It relied on *Ripple*, which ultimately held that California has a "stricter privity requirement" than federal law and granted defendants' summary judgment for lack of direct privity. 2024 WL 3074379 (N.D. Cal. June 20, 2024). The *Ethereummax* court later dismissed with prejudice because "Plaintiffs failed to allege even a single sale of EMAX Tokens by Defendant." 2023 WL 6787458, at *12 (C.D. Cal. Oct. 3, 2023).

### B.    The State Common-Law Fraud Claim Fails

Plaintiff's common law fraud claim must be dismissed for the same reasons as his statutory claims, including failure to satisfy Rule 9(b), lack of false statements, lack of scienter, and lack of privity. Mot. at 31–32. Plaintiff spends just a single paragraph defending the common law claim ***without citing even a single paragraph of the AC***. Opp. at 28. Plaintiff's attempt to distinguish *Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013), is also futile. Specifically, Plaintiff argues that he "does not allege he was fraudulently sold a security disguised as something else" (Opp. at 29), but that is the core of his Section 12 claims. The Court should dismiss.

### C.    The Quasi-Contract Claim Fails

Plaintiff's quasi-contract claim must be dismissed because he has not alleged "***facts*** suggesting that damages are insufficient." *McIntyre v. Honda*, 739 F. Supp. 3d 776, 804 (C.D. Cal. 2024) (citing *Sonner v. Premier*, 971 F.3d 834 (9th Cir. 2020)).

Once again, Plaintiff does not dispute or address the arguments and binding authority in Defendants' motion. Rather, Plaintiff falsely claims his quasi-contract claim is "narrowly tailored" and distinct from his other claims. Opp. at 29. It is not. It "realleges and incorporates" all the AC's other allegations "as if set forth fully herein." AC ¶163. Plaintiff also relies on a generic disclaimer that the quasi-contract claim is asserted only "to the extent … [he has] no other adequate remedy at law." Opp. at 29. But this Court has expressly rejected this argument, holding that "conclusory allegations about [plaintiff's] uncertainty as to the damages that will be available do not establish that [plaintiff] lacks an adequate remedy at law." *McCracken v. KSF*, 2023 WL 5667869, at *8 (C.D. Cal. Apr. 4, 2023) (Blumenfeld, J.). Likewise, this Court (and many others) have rejected Plaintiff's alternative pleading argument. *See id.* ("Given … *Sonner*['s] holding that the plaintiff's claims for equitable remedies were properly dismissed under Rule 12(b)(6), the district court decisions suggesting that such dismissal is inconsistent with the federal rules [regarding pleading in the alternative] are no longer persuasive."); *Bride v. Snap*,

2025 WL 819567, at *9 (C.D. Cal. Feb. 21, 2025) (finding that post-*Sonner* courts have rejected plaintiffs pleading equitable remedies in the alternative). Plaintiff's sole authority, *Nacarino v. Chobani*, is inapt. 668 F. Supp. 3d 881, 895–97 (N.D. Cal. Feb. 4, 2022) (allowing alternative pleading only where equitable claim was distinguished from plaintiff's other claims and she had no basis to assert damages).

## VII. PLAINTIFF'S SECONDARY LIABILITY CLAIMS AGAINST HUTCHINS FAIL

The Court should dismiss the secondary liability claims against Hutchins.

**The Section 15 Claim Fails**. The AC's Section 15 claim fails because it is premised on Hutchins' purported "control over the $JENNER project" (AC ¶137), but Plaintiff does not even attempt to allege a primary violation by the "$JENNER project." *See In re Rigel Pharms.*, 697 F.3d 869, 886 (9th Cit. 2012) (affirming dismissal of §15 claim because it "require[s] underlying primary violations of the securities laws"). The Opposition pivots and instead argues that Caitlyn "Jenner is the primary violator." Opp. at 30. But Plaintiff's argument "is not alleged in the Complaint and Plaintiff may not amend his allegations through facts raised in opposition to a motion to dismiss." *King*, 699 F. Supp. 3d at 870.

Even if Plaintiff had included this allegation in the AC, it would still fail. Not only is there no primary violation by Jenner, but Plaintiff's allegations concern Hutchins' control over the *project*—the AC is silent as to Hutchins' control over *Jenner*. All the AC alleges is that Hutchins "frequently post[ed] in the public Telegram account" and "conduct[ed] multiple Twitter Spaces sessions" (AC ¶84(a)); that it was "Jenner **or** Hutchins [that] were responsible for all business-related decisions" (*id.*); and that Hutchins "introduce[ed] Arora to Jenner to create the $JENNER project" (*id.* ¶60). This says nothing of Hutchins' control over Jenner.

Plaintiff's cases undermine his argument. *In re Homestore.com* held that "pre-existing or even on-going personal or professional relationships between the control person and the purported controllee" are insufficient to infer control. 347 F. Supp. 2d 790, 810 (C.D. Cal. 2004). Likewise, *In re Gupta* held that defendants cannot be

liable for "statements attributable to identified individuals … under a theory of control person liability" because "statements attributable to specific individuals are presumed to be the actions of those individuals only." 900 F. Supp. 1217, 1242–43 (N.D. Cal. 1994). *Gupta* also dismissed control person claims against director defendants despite allegations that they "controlled the contents of [] financial reports and press releases" and could have prevented false statements because, inter alia, "[s]tatus alone is ordinarily insufficient to establish control person liability" and "mere titles are not adequate indicators of control authority." *Id.* Plaintiff has again waived by failing to address the Defendants' caselaw (Mot. at 33–34).

**The Aiding and Abetting Claim Fails**. In violation of Rule 9(b), the AC fails to plead what underlying violation Hutchins purportedly aided and abetted. The Opposition asserts that it is for "Securities Fraud," including §§10(b) and 12(a)(2) of the federal securities laws and §§25401 and 25110 of California's securities laws. Opp. at 31. Not only is this not pled, but any such claims would be frivolous.

For over 30 years the law has been clear that a "private plaintiff may not maintain an aiding and abetting suit" for securities violations. *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994); *see Burnett v. Rowzee*, 561 F. Supp. 2d 1120, 1125 (C.D. Cal. 2008) ("[t]here is no private 'aiding and abetting' or 'conspiracy' liability under the [federal securities laws]"). Unsurprisingly, earlier this year a court in this Circuit rejected the exact type of claim Plaintiff seeks to bring (i.e. an "aiding and abetting claim under California law" for an underlying violation of the federal securities laws (Opp. at 31)). *See Cesario v. Biocept*, 2025 WL 525120, at *34 n.33 (S.D. Cal. Feb. 18, 2025). In fact, *Ethereummax*—on which Plaintiff relies—makes this point crystal clear:

> To the extent the aiding and abetting claim is an attempt to extend the reach of the securities law violations, the claim fails because, as noted, the securities law claims explicitly preclude courts from extending liability beyond the statutory causes of action…. Plaintiffs must grapple with the case law that common law theories of liability may not be used to expand liability for securities violations (at least under California law).

1 | 2023 WL 6787827, at *41.[12]

2 |     The same is true of the California statutory securities claims. Court have made

3 | clear that "no occasion or justification exists for a court to impose liability" for aiding

4 | and abetting "because Corp. Code §§25504, 25504.1, and 25504.2 precisely set forth

5 | the extent to which persons other than the vendor may also be liable." *Apollo*, 158

6 | Cal. App. 4th at 253–54. The AC does not allege these claims.

7 |     This leaves only the common law fraud claim, but nowhere in the AC does

8 | Plaintiff allege that Hutchins aided and abetted that claim. As Plaintiff points out, the

9 | aiding and abetting claim is purportedly for "the violations of federal of [sic] state

10 | securities laws identified herein." AC ¶159. The fraud claim must be dismissed.

11 |     Regardless, the AC falls well short of pleading with particularity that Hutchins

12 | "***knew about the fraud*** and ***provided substantial assistance***." *Su v. Henry Glob.*,

13 | 2022 WL 19392, at *4 (C.D. Cal. Jan. 3, 2022); *see Axonic v. Gateway*, 2018 WL

14 | 11355034, at *17 (C.D. Cal. Dec. 18, 2018) (aiding and abetting is "subject to Rule

15 | 9(b)"). The most Plaintiff musters are conclusory allegations that "without

16 | Hutchins's assistance" Jenner "would not have been able to" commit the underlying

17 | violations, "Hutchins gave substantial encouragement," and her "substantial

18 | assistance and encouragement in the fraud caused" Plaintiff's purchases. Opp. at 31.

19 | These come nowhere close to pleading "particularized ***facts***" showing substantial

20 | assistance. *See Cesario*, 2025 WL 525120, at *34 (dismissing because "conclusory

21 | allegations" that defendants "'knew or should have known' fall short").

22 | **VIII. Conclusion**

23 |     Plaintiff has had numerous opportunities to attempt to cure his pleading

24 | deficiencies. He has been unable to do so. The Court should dismiss with prejudice.

25 |

---

26 | [12] Plaintiff suggests that *Levine v. Diamanthuset*, 950 F.2d 1478 (9th Cir. 1991), supports a state law cause of action for aiding and abetting a federal securities claim.

27 | Opp. at 31. But *Levine* is not about state law aiding and abetting—it is a pre-*Central Bank* case that asks whether private plaintiffs can allege aiding and abetting under

28 | Rule 10b-5. 950 F.2d at 1483. They cannot. *See Cent. Bank*, 511 U.S. at 191.

1 DATED: April 18, 2025    Respectfully submitted,

2             WINSTON & STRAWN LLP

3

4            By: */s/ Jeffrey L. Steinfeld*

              Jeffrey L. Steinfeld

5              John E. Schreiber

6              George Mastoris

7              Attorneys for Defendants

8              Caitlyn Jenner and Sophia Hutchins

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Caitlyn Jenner and Sophia Hutchins, certifies that this reply memorandum in support of Defendants' motion to dismiss does not exceed 20 pages, which complies with the Court's order allowing an oversized brief (ECF No. 30).


DATED: April 18, 2025                    */s/Jeffrey L. Steinfeld*
                                          Jeffrey L. Steinfeld