BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
cheryl.chang@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Jennifer L. Achilles (*pro hac vice*)
jennifer.achilles@blankrome.com
Michael E. Donohue (*pro hac vice*)
michael.donohue@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:   212.885.5000
Facsimile:   212.885.5001

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM AZAD and MIHAI CALUSERU, on behalf of themselves, all other similarly situated, and the general public<br><br>Plaintiffs,<br><br>vs.<br><br>CAITLYN JENNER and AMY L. ANDRUS, Administrator of the Estate of Sophia Lorretta Hutchins,<br><br>Defendants. | Case No. 2:24-cv-09768-SB-JC<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Judge:   Hon. Stanley Blumenfeld, Jr.<br>Date:     January 16, 2026<br>Time:     8:30 a.m.<br>Courtroom:   6C<br>Action Filed:  November 13, 2024 |

# TABLE OF CONTENTS

I.    The Securities Act claim should be dismissed...........................................1

    A.    Greenfield's transactions in $JENNER were not domestic. ...........1

    B.    $JENNER is a token, not a security. ................................................7

    C.    Hutchins was not a statutory seller.................................................9

II.   The fraud claim should be dismissed........................................................9

III.  The quasi-contract claim should be dismissed. ......................................10

IV.   Conclusion .............................................................................................12

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y. 2019) ................................................................. 8

*Barron v. Helbiz Inc.*,
   No. 20 Civ. 04703, 2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023) .......................... 5

*Baylor v. Honda Motor Co.*,
   No. 23CV00794, 2024 WL 650415 (C.D. Cal. Jan. 19, 2024) ............................... 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................. 3

*In re Century Aluminum Co. Securities Litigation*,
   729 F.3d 1104 (9th Cir. 2013) ......................................................................... 3, 6

*Cheng v. Liu*, No. 20-cv-01726,
   2021 WL 12313014 (D.S.C. May 20, 2021) ........................................................ 7

*Combs v. Safemoon LLC*, No. 22-cv-00642
   2024 WL 1347409 (D. Utah Mar. 29, 2024) ........................................................ 4

*De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*,
   608 F.2d 1297 (9th Cir. 1979) ............................................................................. 9

*In re Ethereummax Investor Litigation*,
   No. CV 22-00163, 2023 WL 6787827 (C.D. Cal. June 6, 2023)......................... 11

*In re Ethereummax Investor Litigation*,
   No. CV 22-00163, 2023 WL 6787458 (C.D. Cal. Oct. 3, 2023) ......................... 11

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014)................................................................... 6

*Friel v. Dapper Labs, Inc.*,
   657 F. Supp. 3d 422 (S.D.N.Y. 2023) .................................................................. 9

*Giunta v. Dingman*,
   893 F.3d 73 (2d Cir. 2018) .................................................................................. 6

*Gugick v. Melville Capital, LLC*, No. 11-CV-6294,
    2014 WL 349526 (S.D.N.Y. Jan. 31, 2014) ................................................. 8

*Hollifiel v. Resolute Cap. Partners Ltd., LLC*, No. 22-CV-07885,
    2023 WL 4291524 (C.D. Cal. May 12, 2023) ............................................. 9

*Kearns v. Ford*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................. 11

*Legal Additions LLC v. Kowalski*, No. C-08-2754,
    2010 WL 335789 (N.D. Cal. Jan. 22, 2010) ............................................. 10

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) .................................................... 12

*Marques v. Fed. Home Loan Mortg. Corp.*, No. 12CV1873,
    2013 WL 1932920 (S.D. Cal. May 8, 2013) ............................................. 12

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) .............................................................................. 1, 4

*Oberlander v. Coinbase Glob. Inc.*, No. 23-184-CV,
    2024 WL 1478773 (2d Cir. Apr. 5, 2024) .................................................. 6

*Pirani v. Slack Technologies, Inc.*,
    127 F.4th 1183 (9th Cir. 2025), *cert. denied*, No. 25-44 (U.S. Oct. 6, 2025) ..... 3, 6

*Real v. Yuga Labs, Inc.*, No. CV 22-8909,
    2025 WL 3437389 (C.D. Cal. Sept. 30, 2025) ........................................... 8

*In re Sanofi-Aventis Securities Litigation*,
    293 F.R.D. 449 (S.D.N.Y. 2013) ............................................................... 6

*SEC v. Ahmed*,
    308 F. Supp. 3d 628 (D. Conn. 2018) ....................................................... 5

*SEC v. Bio Def. Corp.*, Civil Action No. 12-11669,
    2019 WL 7578525 (D. Mass. Sept. 6, 2019),
    *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021) .............................. 5

*SEC v. Blockvest LLC*, No. 18CV2287,
    2019 WL 625163 (S.D. Cal. 2019) ............................................................. 2

*SEC v. Goldman Sachs & Co.*,
    790 F. Supp. 2d 147 (S.D.N.Y. 2011) ....................................................... 2

*SEC v. Kik Interactive, Inc.*,
   492 F. Supp. 3d 169 (S.D.N.Y. 2020) .................................................................. 7, 9

*SEC v. Levine*,
   462 F. App'x 717 (9th Cir. 2011) ......................................................................... 7

*SEC v. Liu*,
   549 F. Supp. 3d 1087 (C.D. Cal. 2021) ............................................................... 7

*SEC v. Payward, Inc.*, No. 23-cv-06003,
   2024 WL 4511499 (N.D. Cal. Aug. 23, 2024) ..................................................... 9

*SEC v. Ripple Labs*,
   682 F. Supp. 3d 308 (S.D.N.Y. 2023) .................................................................. 7

*SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832,
   2022 WL 762966 (S.D.N.Y. Mar. 11, 2022) ....................................................... 2

*SEC v. Scoville*,
   913 F.3d 1204 (10th Cir. 2019) ............................................................................ 5

*SEC v. Telegram Grp., Inc.*,
   448 F. Supp. 3d 352 (S.D.N.Y. 2020) .................................................................. 7

*SEC v. World Capital Market, Inc.*,
   864 F.3d 996 (9th Cir. 2017) ................................................................................ 5

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ........................................................................... 1

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .............................................................................. 11

*Stackhouse v. Toyota Motor Co.*, No. CV 10-0922,
   2010 WL 3377409 (C.D. Cal. July 16, 2010) ...................................................... 2

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ............................................................................ 1, 4

*In re Tezos Securities Litig.*, No. 17-CV-06779,
   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) .................................................... 3, 9

*Underwood v. Coinbase Global, Inc.*,
   654 F. Supp. 3d 224 (S.D.N.Y. 2023) .................................................................. 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................. 10

*Williams v. Binance*,
   96 F.4th 129 (2d Cir. 2024) ......................................................... 2, 4, 6

*Zalazar v. Capital Force LLC*, No. 23-21512-CIV,
   2023 WL 4186397 (S.D. Fla. June 26, 2023) ........................................... 5

**Statutes**

15 U.S.C.
   § 77e ............................................................................................................ 1
   § 77k(a) ...................................................................................................... 1
   § 77*l*(a) ................................................................................................... 1, 2
   § 77t(d) ....................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................... 12

The opposition of Lead Plaintiff Lee Greenfield (Dkt. 64, "Opp.") to the motion (Dkt. 63, "Mot.") by Defendants Caitlyn Jenner and Amy L. Andrus, Administrator of the Estate of Sophia Lorretta Hutchins, to dismiss the Second Amended Complaint ("SAC") does nothing to save his claims. His case against Defendants should be dismissed with prejudice.

## I.    THE SECURITIES ACT CLAIM SHOULD BE DISMISSED.

### A.    Greenfield's transactions in $JENNER were not domestic.

1.    To properly state a claim under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), Greenfield must allege that either irrevocable liability attached in the United States or title transferred here. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 948–49 (9th Cir. 2018).

Greenfield nevertheless argues (at 9–11) that the Court should analyze whether Jenner's alleged offers or transmissions of $JENNER as allegedly regulated by Section 5, 15 U.S.C. § 77e, are domestic. But the proper focus is Section 12(a), not Section 5, because Section 12(a) allows Greenfield to sue only because he alleges he purchased a purported security from Jenner. *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50 (S.D.N.Y. 2013).

In *Smart Technologies*, the district court observed that a Section 12(a)(2) claim does not "punish the making of misrepresentations or omissions in a registration statement or prospectus alone, but making such misrepresentations and omissions to an individual who 'purchas[es]' or 'acquir[es]' a security based upon them." 295 F.R.D. at 56 (quoting 15 U.S.C. §§ 77k(a), 77*l*(a)). Accordingly, "to the extent that a plaintiff seeks to impose liability under sections 11 or 12(a)(2), that individual must have purchased a security listed on a domestic exchange or engaged in a 'domestic transaction in other securities.'" *Id.* (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010)).

The same reasoning holds here. The location of an offer in a private securities claim is legally irrelevant because Section 12(a)(1) punishes violations of Section 5

1

only when they are *also* paired with the plaintiff's domestic purchase of a security. Greenfield's authorities (at 9–10) are inapplicable because they do not analyze Section 12 at all. *See SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 762966, at *13 (S.D.N.Y. Mar. 11, 2022); *SEC v. Blockvest LLC*, No. 18CV2287, 2019 WL 625163, *7–9 (S.D. Cal. 2019); *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147, 165 (S.D.N.Y. 2011). Rather, these cases were brought by the SEC, which need not allege a predicate sale, unlike a private plaintiff, which must. *Compare* 15 U.S.C. § 77t(d)(1) (authorizing SEC to sue "whenever … any person has violated any provision of" Securities Act) *with id.* § 77*l*(a) (requiring plaintiff to have "purchas[ed]" security before bringing suit).

      **2.**      In the context of a cryptocurrency transaction, irrevocable liability attaches at the location of the computer where the transaction was matched. *See Williams v. Binance*, 96 F.4th 129, 137–38 (2d Cir. 2024); *see also Stackhouse v. Toyota Motor Co.*, No. CV 10-0922, 2010 WL 3377409, at *1 (C.D. Cal. July 16, 2010) ("[B]ecause the actual transaction takes place on the foreign exchange, the purchaser or seller has figuratively traveled to that foreign exchange—presumably via a foreign broker—to complete the transaction."); Mot. 6.

      Here, Greenfield's purchases of $JENNER on Ethereum occurred at the location of the computers that validated the transaction matching Greenfield and the token's seller. As Greenfield alleged, his purchases were matched with a seller through a Uniswap Automated Market Maker, the operations of which were validated on the blockchain. *See* SAC ¶¶ 29(c), 34–35. Because the actual transaction matching Greenfield to a seller and setting a price took place at the location of the validating computer, both Greenfield and the seller figuratively traveled to that computer to complete the transaction. And because Greenfield can allege only a *probability* that the validating computers were in the United States, he fails to state a claim. *See* Mot. 6–7.

      Greenfield's attempts (at 9) to resist the application of *Pirani v. Slack*

*Technologies, Inc.*, 127 F.4th 1183, 1190 (9th Cir. 2025), *cert. denied*, No. 25-44
(U.S. Oct. 6, 2025), and *In re Century Aluminum Co. Securities Litigation*, 729 F.3d
1104, 1108 (9th Cir. 2013), are meritless. While it is true that both cases involved
Section 11 claims, their holdings were based on generally applicable federal
pleading requirement: whether the plaintiffs' claims were plausible under *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). *See Slack*, 127 F.4th at 1188;
*Century Aluminum*, 729 F.3d at 1107. Under those cases, both of which are binding
on this Court, plaintiffs that rely on statistics to allege something is likely to be true
can meet *Twombly*'s plausibility standard only if they also allege "facts tending to
exclude the possibility that the alternative explanation is true." *Century Aluminum*,
729 F.3d at 1108.

Contrary to Greenfield's argument (at 9) that these rules are dicta, the Ninth
Circuit's rejection of statistical tracing is a core holding in each case: the appellant
in *Slack* waived whether he could allege that his shares were actually purchased in a
public offering, forcing him to rely on statistical tracing like Greenfield, *see* 127
F.4th at 1188–89, and the *Century Aluminum* court described the need to exclude
alternatives as a "holding," 729 F.3d at 1108. *In re Tezos Securities Litigation*,
No. 17-CV-06779, 2018 WL 4293341, at *8 (N.D. Cal. Aug. 7, 2018), is
distinguishable as there was a server in Arizona through which the plaintiff
purchased securities. To the extent *Tezos* relies on the clustering of Ethereum nodes
in the United States, it conflicts with *Slack*, controlling and later-decided Ninth
Circuit precedent. *See also* Mot. 6–7.

    **3.**    Unable to rely on statistics to make his allegations of domesticity
plausible, Greenfield instead focuses on Jenner's physical location. In doing so,
Greenfield misstates the law and relies on inapposite authority.

*First*, it is incorrect that "[d]ismissal under *Morrison* is 'proper where … the
plaintiff pleads facts that suggest that nothing about the transaction is domestic.'"
*Contra* Opp. 2 (quoting *Combs v. Safemoon LLC*, No. 22-cv-00642, 2024 WL

1347409, at *6 (D. Utah Mar. 29, 2024)). The mere presence of some domestic activity does not bring a transaction under the regulation of the Securities Act. *See Morrison*, 561 U.S. at 266 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."). Greenfield also misleadingly quotes (at 5) *Binance*, 96 F.4th at 140, to suggest that *matching* while Jenner was in California establishes domesticity. The quote is in the context of the case's alternative holding concerning the *plaintiffs'* location in the United States when they entered into the Terms of Use with Binance, placed their trade orders, and sent payments. None of those considerations apply here. *See* Mot. 8.

*Second*, Greenfield incorrectly contends (at 4, 8) that Jenner's location in California while allegedly being in privity with Greenfield is sufficient to establish domesticity. But in *Stoyas*, 896 F.3d at 949, the court held that allegations that a defendant sold securities in the United States—necessarily implying the parties were in privity—were insufficient to establish domesticity. *See also Baylor v. Honda Motor Co.*, No. 23CV00794, 2024 WL 650415, at *4 (C.D. Cal. Jan. 19, 2024) (observing that allegation of U.S.-located purchaser or seller is insufficient to establish domesticity). For the same reason, Greenfield's statement (at 5) that "Jenner incurred irrevocable liability to *deliver* securities while in the U.S., regardless of what node later validated the transaction," is contrary to law. It is not where Jenner was when the transaction matched that matters, *see Stoyas*, 896 F.3d at 949—it is the location of the Ethereum node that processed the matching, *see Binance*, 96 F.4th at 137–38. Greenfield also admits that "every transaction on the Ethereum block chain," including matching, "becomes irrevocable only after it is validated by a network of global nodes … ." SAC ¶ 235.

The cases Greenfield cites (at 2, 5–6) to attach significance to Jenner's location in the United States differ from this case because they all include a step in the transaction that occurred in this country. In *SEC v. Scoville*, 913 F.3d 1204, 1226

4

(10th Cir. 2019) (Briscoe, J., concurring), the defendant "made its sales through computer servers based solely in the United States." Greenfield cannot make that allegation here. *See also* Mot. 10. In *Barron v. Helbiz Inc.*, No. 20 Civ. 04703, 2023 WL 5672640, at *6 (S.D.N.Y. Sept. 1, 2023), the U.S.-based wallet minted a coin "whenever a purchaser executed the smart contract." Here, by contrast, the tokens were minted before anyone tried to purchase $JENNER, *i.e.*, before irrevocable liability. In *Zalazar v. Capital Force LLC*, No. 23-21512-CIV, 2023 WL 4186397, at *6 (S.D. Fla. June 26, 2023), the U.S.-based defendants signed the relevant deal documents and "consummated" the transaction in Miami. *See also SEC v. Bio Def. Corp.*, Civil Action No. 12-11669, 2019 WL 7578525, at *12 (D. Mass. Sept. 6, 2019) ("Lu counter-signed [subscription agreements] in Bio Defense's Boston office … ."), *aff'd sub nom. SEC v. Morrone*, 997 F.3d 52 (1st Cir. 2021); *SEC v. Ahmed*, 308 F. Supp. 3d 628, 669 (D. Conn. 2018) (observing defendant received signed transfer instruments in the United States). Here, the transactions were consummated on the blockchain, and no deal documents were signed or received in the United States. Finally, in *SEC v. World Capital Market, Inc.*, 864 F.3d 996, 1000, 1009 n.11 (9th Cir. 2017), millions of dollars were raised from investors in the United States. Not so here.

*Third*, Greenfield argues (at 6–7) that irrevocable liability for Jenner occurred in the United States because Jenner was in California when she placed the transaction locking liquidity. This argument directly contradicts Greenfield's SAC, where he alleged that "Jenner's transaction locking liquidity" occurred at the location of the computer that validated the transaction, SAC ¶ 235, which he cannot plausibly allege was in the United States.

In any event, the location of Jenner's transaction locking liquidity is legally irrelevant because irrevocable liability attaches when *both* parties match. *See Binance*, 96 F.4th at 137–38. Here, Greenfield had not appeared as a purchaser at the time Jenner allegedly locked liquidity. The cases Greenfield cites in support (at 7)

only highlight this deficiency in his argument. In both *Giunta v. Dingman*, 893 F.3d
73, 80 (2d Cir. 2018), and *In re Sanofi-Aventis Securities Litigation*, 293 F.R.D. 449,
458 (S.D.N.Y. 2013), irrevocable liability had attached only *after* the plaintiff agreed
to purchase a security.

4.      When focusing on where title passed, Greenfield first attempts to
establish he purchased $JENNER directly from Jenner by amending the SAC
through his opposition brief. Previously, Greenfield used statistical tracing forbidden
by *Slack* and *Century Aluminum* to allege that Jenner passed title of $JENNER to
Greenfield in the United States. *See, e.g.*, SAC ¶ 228 ("[I]t is *likely* Mr. Greenfield
purchased some ERC-20 $JENNER tokens directly from Jenner …" (emphasis
added).). Now, Greenfield characterizes (at 7–8) those same allegations as
"superfluous" and instead argues that Jenner definitely passed title to the tokens he
purchased. This is improper because "the complaint may not be amended by the
briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d
999, 1009 (N.D. Cal. 2014).

Even if true, the location of Jenner (or any other seller) alone is legally
irrelevant. *See* Mot. 9–10. Greenfield misuses *Underwood v. Coinbase Global, Inc.*
in claiming that Jenner's location when title passed is sufficient to establish
domesticity; *Underwood* did not address domesticity at all. *See* 654 F. Supp. 3d 224
(S.D.N.Y. 2023), *aff'd in part, rev'd in part and remanded sub nom. Oberlander v.
Coinbase Glob. Inc.*, No. 23-184-CV, 2024 WL 1478773 (2d Cir. Apr. 5, 2024),

The alleged receipt of funds from transaction taxes likewise does not establish
that title passed in the United States. *Contra* Opp. 8. The transaction taxes were
entirely separate from Greenfield's purchase of $JENNER. They were not connected
to the passing of title related to Greenfield's purchases and would have applied
whether Greenfield was purchasing or selling. *See* Mot. 18 n.3. Each of *SEC v. Liu*,
549 F. Supp. 3d 1087, 1092 (C.D. Cal. 2021); *Cheng v. Liu*, No. 20-cv-01726, 2021
WL 12313014, at *3 (D.S.C. May 20, 2021); and *SEC v. Levine*, 462 F. App'x 717,

6

719 (9th Cir. 2011), is inapposite. In those cases, the money paid was for the actual purchases giving rise to the plaintiffs' securities claims, not some side transaction.

**B.    $JENNER is a token, not a security.**

$JENNER is not a common enterprise, and Greenfield has not alleged that purchasers of $JENNER expected profits solely from the efforts of others. Greenfield's opposition does not establish otherwise.

1.    Greenfield points (at 12) to the 3% transaction tax paid for access to the liquidity pool as proof of horizontal commonality. This argument suffers from at least two flaws. *First*, as discussed *supra*, the tax is separate from $JENNER sales proceeds. Greenfield cites no authority basing horizonal commonality on the alleged pooling of tax payments. *Second*, there is no common enterprise for the transaction tax to support. Every case cited by Greenfield (at 12–13) in support of his argument involved pooling proceeds from cryptocurrency sales, as well as cryptocurrencies that had utility beyond being an asset to trade. *See SEC v. Ripple Labs*, 682 F. Supp. 3d 308, 325–26 (S.D.N.Y. 2023) ("Ripple used the funds it received from its Institutional Sales to promote and increase the value of XRP by developing uses for XRP and protecting the XRP trading market."); *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 178–79 (S.D.N.Y. 2020) (observing that Kik pooled proceeds from Kin sales "to increase the range of goods and services that holders of Kin would find beneficial to buy and sell with Kin"); *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 369 (S.D.N.Y. 2020) ("Telegram pooled the money received from the Initial Purchasers and used it to develop the TON Blockchain as well as to maintain and expand Messenger."). Without allegations that Defendants pooled the actual *sales* proceeds from $JENNER, and that $JENNER had utility beyond being a tradeable token, there is no horizontal commonality. *See also* Mot. 11–12; *Real v. Yuga Labs, Inc.*, No. CV 22-8909, 2025 WL 3437389, at *8–9 (C.D. Cal. Sept. 30, 2025) (finding no horizontal commonality where token had no use other than trading).

Greenfield also attempts (at 12) to use the alleged plan to distribute shares of

Jenner's Olympic medal as proof of a pro rata fund distribution. He cites no authority suggesting that an *unrealized* plan to distribute profits sufficiently alleges horizontal commonality. Instead, he cites *Balestra v. ATBCOIN LLC*, which involved a useful ecosystem supported by a token—facts not present here. *See* 380 F. Supp. 3d 340, 347, 353 (S.D.N.Y. 2019) ("[T]he funds raised through the ICO were pooled together to facilitate the launch of the ATB Blockchain … .").

**2.**     Alternatively, Greenfield presents several unsuccessful theories (at 13) for how $JENNER exhibits vertical commonality. His claim that Jenner owned millions in $JENNER again goes beyond the bounds of the SAC: he never alleges that Jenner owned the wallet that allegedly "sniped" $JENNER shortly after trading began, nor that the project attorney Paul Mariano meant *Jenner* had purchased the ERC020 tokens. *See* SAC ¶¶ 92, 188. Greenfield's alternative assertion that the transaction tax would be "highly correlated to the price" is unsupported by the SAC, and his reference that it would be correlated with transaction volume is belied by *Gugick v. Melville Capital, LLC*, No. 11-CV-6294, 2014 WL 349526, at *5 (S.D.N.Y. Jan. 31, 2014), which held that the existence of a commission prevented a finding that the promoter and investors of an asset were financially linked. Greenfield makes no effort to distinguish that case. *See also* Mot. 12.

**3.**     Greenfield also fails to allege that token holders expected to profit solely from Jenner's efforts. Greenfield cannot distinguish *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1300 (9th Cir. 1979). Any representations concerning how Jenner would increase the value of the token by allegedly reinvesting in the project are no different than the promise of the *De Luz Ranchos* promotor to develop common facilities. Mot. 13. Greenfield's argument (at 14) that promotion of $JENNER itself constituted "*entrepreneurial and managerial efforts*" fails because his cited cases all involved substantive activity to increase the tokens' value. *See Kik Interactive*, 492 F. Supp. 3d at 180 ("[W]ithout the promised digital

8

ecosystem [developed by Kik], Kin would be worthless."); *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 447–48 (S.D.N.Y. 2023) ("Dapper Labs's implicit promise to maintain the Flow Blockchain and facilitate trades on the Marketplace drive [the token]'s value."); *SEC v. Payward, Inc.*, No. 23-cv-06003, 2024 WL 4511499, at *16 (N.D. Cal. Aug. 23, 2024) ("[P]romoters … worked to create the networks or 'ecosystems' that would support the value of the digital assets … .").

### C. Hutchins was not a statutory seller.

Greenfield argues (at 15) that Hutchins was a statutory seller because of her alleged role in $JENNER. But he does not allege that "he was cognizant of, or influenced by [her] involvement," which is dispositive of the issue. *See In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018); *Hollifiel v. Resolute Cap. Partners Ltd., LLC*, No. 22-CV-07885, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (Blumenfeld, J.) (holding defendants were not statutory sellers when plaintiff did not allege they had been exposed to defendants' marketing). The SAC otherwise fails to allege that any posts by Hutchins on Telegram amounted to solicitation, and Greenfield concedes by silence that he both engaged in impermissible group pleading and failed to allege that Hutchins would financially benefit from promoting $JENNER. *See* Mot. 14–15.

## II. THE FRAUD CLAIM SHOULD BE DISMISSED.

Greenfield's fraud claim should be dismissed because he has not alleged an actionable misstatement, intent, or reliance.

*First*, Greenfield fails (at 17) to establish reliance. Although he points to three paragraphs in the SAC, one ("¶ 221", but presumably ¶ 212) does not address the subject X post at all, another (¶ 278) only conclusorily alleges his reliance, and the third (¶ 88) relates to a different statement entirely. His claim that he must have "heard" Jenner's post on X from someone else is beside the point. Greenfield has alleged that one—and only one—statement was false. *See* SAC ¶ 276. By failing to allege he even saw it—and thus precisely which statement he contends is false and

the circumstances in which he viewed it—Greenfield has failed to plead the
necessary "'who, what, when, where, and how' of the misconduct charged." *See*
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation
omitted). He also does not address that he likely made his Solana purchases before
Jenner made the subject post on X. *See* Mot. 17 n.2.

*Second*, Greenfield does not plead an actionable misstatement. Although he
argues (at 16) that it is plausible that Jenner planned to launch on Ethereum when
she allegedly said otherwise, his only evidence is the supposed complexity of setting
up a token on Uniswap. But he contradicts his own allegations, which describe the
process as simple: Go to Uniswap, click a few buttons, and then "the liquidity pool
will be live and swapping can begin immediately." SAC ¶ 33. Nothing about this
process suggests that it would take more than a few hours, much less the two days
between when Jenner posted and the token launched. Greenfield does not attempt to
distinguish *Legal Additions LLC v. Kowalski*, No. C-08-2754, 2010 WL 335789, at
*5 (N.D. Cal. Jan. 22, 2010), which rejected fraud allegations much like those here.
*See* Mot. 16. His attempts (at 16–17) to show he plausibly alleged intent are
similarly inconsistent with the pleadings. *See* Mot. 16.

*Third*, Greenfield (at 17) fails to describe any privity between himself and
Jenner with respect to the Solana token. *See* Mot. 12. *Kearns v. Ford*, 567 F.3d 1120,
1125–27 (9th Cir. 2009), cited by Greenfield (at 17), does not address California's
privity requirement in any way and in any event dismissed the subject claim.

## III. THE QUASI-CONTRACT CLAIM SHOULD BE DISMISSED.

No quasi-contract cause of action is available to Greenfield.

*First*, Greenfield concedes (at 18) that his quasi-contract claim could be
pursued as a breach-of-contract or fraud claim by arguing that Jenner's statements
concerning the use of the taxes were both "an inducement for Plaintiff to purchase
$JENNER" and "a distinct obligation," *i.e.*, a contractual promise. Although he
argues that Jenner has not explained why a fraud claim is viable, it is *Greenfield*

who must "establish that [he] lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). And he claims that his quasi-contract claim "sounds in contract," but he does not explain how the SAC contains "factual allegations as to why any relief on Greenfield's legal claims may be inadequate." *See* Dkt. 38, at 13; *see also* Mot. 19.

*Second*, Greenfield does not explain why the smart contract governing the relationship between Jenner and him regarding the tax payment is in some way unenforceable, which he must do to maintain a quasi-contract claim in the face of a contract governing the subject matter. *See* Mot. 18. Greenfield's quotation (at 17) from *In re Ethereummax Investor Litigation*, No. CV 22-00163, 2023 WL 6787458, at *8 (C.D. Cal. Oct. 3, 2023), which does not include this caveat, is thus incomplete. Moreover, unlike in *Ethereummax*, there is no "key dispute [about] the existence of a contract" here. *See id.*, 2023 WL 6787827, at *16 (June 6, 2023). Rather, the dispute is about the scope of the agreement between Jenner and Greenfield, and, having failed to plead that the contract allowing access to the liquidity pool in return for taxes was unenforceable, he is barred from asserting a quasi-contract claim.[1] His attempt to distinguish *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017), slices the issue too finely. The subject matter in *Facebook* was advertising services broadly defined, just as the subject matter of the agreement here was the transaction tax. Greenfield's dispute is thus similarly about the *scope* of an agreement he concedes exists, rather than its existence *vel non*.

*Third*, the SAC suffers from fatal pleading deficiencies. It is subject to Rule 9(b), as Greenfield has "cho[sen] to allege in the complaint that the defendant has engaged in fraudulent conduct in support of a claim," *i.e.*, he has alleged that Jenner

---

[1] Jenner's argument that the tax is an access fee is not "self-serving." *Contra* Opp. 17 n.3. Rather, it is an accurate description of the transaction that Greenfield describes. *See* SAC ¶¶ 193, 223.

11

lied when she described what she would do with the transaction tax. *See Marques v. Fed. Home Loan Mortg. Corp.*, No. 12CV1873, 2013 WL 1932920, at \*5 (S.D. Cal. May 8, 2013). His laundry list (at 18) of supposedly false statements fails to identify why any of them were false *at the time*, a classic Rule 9(b) violation. *See also* Mot. 20.

*Fourth*, Greenfield's inconsistency (at 18) in whether the tax was secret or a prominent factor in his choice to purchase $JENNER further illustrates the extent to which his quasi-contract claim is merely an improper catch-all that cannot stand on its own as a proper cause of action.

## IV.  CONCLUSION

Prior to filing the SAC, counsel for Greenfield conceded that he had "only one more shot" (Dkt. 38, at 14), and Greenfield does not now proffer any new facts he could plead to save his case. He should not be given another opportunity to contort his allegations to fit a viable legal theory. The Second Amended Complaint should be dismissed with prejudice.

DATED: December 15, 2025          Respectfully submitted,

                                  **BLANK ROME LLP**

                                  By:  */s/ Cheryl S. Chang*
                                  Cheryl S. Chang
                                  Jennifer L. Achilles (*pro hac vice*)
                                  Jamison T. Gilmore
                                  Michael E. Donohue (*pro hac vice*)

                                  *Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this memorandum in support of Defendants' motion to dismiss does not exceed 4000 words.

DATED: December 15, 2025          */s/ Cheryl S. Chang*
                                                    Cheryl S. Chang

13