BLANK ROME LLP
Cheryl S. Chang (SBN 237098)
cheryl.chang@blankrome.com
Jamison T. Gilmore (SBN 322100)
jamison.gilmore@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Jennifer L. Achilles (*pro hac vice*)
jennifer.achilles@blankrome.com
Michael E. Donohue (*pro hac vice*)
michael.donohue@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:   212.885.5000
Facsimile:   212.885.5001

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM AZAD and MIHAI CALUSERU, on behalf of themselves, all other similarly situated, and the general public<br><br>                          Plaintiffs,<br><br>    vs.<br><br>CAITLYN JENNER and AMY L. ANDRUS, Administrator of the Estate of Sophia Lorretta Hutchins,<br><br>                        Defendants. | Case No. 2:24-cv-09768-SB-JC<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Judge:    Hon. Stanley Blumenfeld, Jr.<br>Date:     January 16, 2026<br>Time:     8:30 a.m.<br>Courtroom:  6C<br>Action Filed:  November 13, 2024 |

Defendants Caitlyn Jenner and Amy L. Andrus, Administrator of the Estate of Sophia Lorretta Hutchins, respectfully write to notify the Court of an interpretive rule announced on March 17, 2026, by the Securities and Exchange Commission entitled *Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets* (the "Interpretive Rule," Ex. 1), which supersedes the Staff Statement cited by Defendants in support of their pending motion to dismiss (*see* Dkt. 63, at 10, 11; Interpretive Rule 18 n.62), and which is otherwise relevant to the pending motion in four ways. The Interpretive Rule will become effective immediately upon publication in the Federal Register.

*First*, the Commission indicated that a "meme coin" is typically a "digital collectible," not a security, because such coins "are acquired for artistic, entertainment, social, and cultural purposes, and [that] their value is driven by supply and demand, rather than any essential managerial efforts of others." (Interpretive Rule 18.) It further observed that although the value of digital collectibles, including meme coins, "may be impacted directly or indirectly by the activities or reputation of the creator—as may occur with respect to a physical collectible—the creator of a digital collectible typically does not make representations or promises to undertake essential managerial efforts from which a purchaser would reasonably expect to derive profits." (*Id.* at 19.) The Commission accordingly determined that a digital collectible by itself is "not a security because it does not have the economic characteristics of a security." (*Id.* at 18.)

*Second*, the Commission explicitly discussed the import of "royalties" earned by digital collectible issuers from the transfer of their assets, which are akin to the transaction taxes in this matter. (*Compare* Interpretive Rule 17 n.60 *with* Dkt. 63, at 3.) The Commission explained that because the holder of the digital collectible "does not receive any share of the creator royalty, and the digital collectible holder has no rights or interest in or with respect to a business enterprise or other entity, promisor, or obligor associated with the creator," the existence of the royalty (or tax)

"does not change a digital collectible into a security." (Interpretive Rule 17 n.60; *see also* Dkt. 63, at 12; Dkt. 89, at 8.)

*Third*, the Commission considered circumstances that may transform the sale of a non-security crypto asset like a digital collectible into an "investment contract" as defined by the Securities Act, 15 U.S.C. § 77b(a)(1). Of note, it discussed when it would be reasonable for an asset purchaser to expect profits from the managerial efforts of others. The Commission noted that, "[r]epresentations or promises by an issuer … to develop and achieve functionality for a non-security crypto asset and/or develop an associated crypto system together with a business plan containing detailed milestones, a timeline, information about personnel, sources of funding and other resources needed to meet those milestones, and an explanation of how holders of the non-security crypto asset will profit from those efforts, likely would reasonably create an expectation of profit." However, "representations or promises that are vague or contain no semblance of an actionable business plan, such as those lacking milestones, funding, or other plans for needed resources, likely would not create reasonable expectations of profit." (Interpretive Rule 27; *see also* Dkt. 63, at 13; Dkt. 89, at 8–9.)

*Fourth*, the Commission discussed whether the use of "Redeemable Wrapped Tokens" to distribute crypto assets via a liquidity pool, the same mechanism used by Defendants here, could subject a crypto asset to the securities laws. (*Compare* Interpretive Rule 54 *with* Dkt. 63, at 2.) The Commission concluded that this mechanism does not alone make a crypto asset a security or its sale an investment contract because (1) the purchasers' "funds are neither pooled together to be deployed by promoters or other third parties for developing any enterprise, nor are their fortunes tied to the efforts of a promoter or other third party or shared with those of a promoter or other third party" and (2) "any economic benefits realized by holders of such a Redeemable Wrapped Token are not derived from the essential managerial efforts of others." (Interpretive Rule 57.)

DATED: March 18, 2026

Respectfully submitted,

**BLANK ROME LLP**

By:  */s/ Cheryl S. Chang*

Cheryl S. Chang
Jennifer L. Achilles (*pro hac vice*)
Jamison T. Gilmore
Michael E. Donohue (*pro hac vice*)

*Counsel for Defendants*

3

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 20, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on February 20, 2025.

By:  /s/AJ Cruickshank