**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Lead Counsel*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAEEM AZAD and MIHAI CALUSERU, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>CAITLYN JENNER and SOPHIA HUTCHINS,<br><br>Defendants. | Case No: 2:24-cv-9768-SB-JC<br><br>**LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY (DKT. NO. 98)**<br><br>Judge:       Hon. Stanley Blumenfeld Jr.<br>Hearing:    January 30, 2026, 8:30 a.m.<br>Location:   Courtroom 6C |

Lead Plaintiff Lee Greenfield respectfully requests leave to file this brief response to Defendants' March 18, 2026 Notice of Supplemental Authority ("Notice") arguing that an interpretive rule announced by the Securities and Exchange Commission on March 17, 2026, should guide the Court's analysis here. (*See* Dkt. No. 98 (citing *Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets* ("Interpretive Rule"), filed as Dkt. No. 98-1).)

Contrary to Defendants' argument, the Interpretive Rule does not change the analysis. First, like the Staff Statement before it on which Defendants rely, the Interpretive Rule is merely guidance; it is not binding on the Court. *Howey* and Ninth Circuit precedent continue to govern. (*Accord* Interpretive Statement at 8 ("The interpretation in this release does not supersede or replace the *Howey* test, which is binding legal precedent.").)

Second, the Interpretive Rule does not give so-called "meme coins" an automatic safe harbor from the securities laws, as Defendants suggest. (*See* Notice at 1 ("The Commission . . . determined that a digital collectible by itself is 'not a security because it does not have the economic characteristics of a security.'" (quoting Interpretive Rule at 18).) Instead, the Interpretive Rule says digital collectibles can be sold as investment contracts depending on their promotion: "A non-security crypto asset becomes subject to an investment contract when an issuer offers it by inducing an investment in money in a common enterprise with representations or promises to undertake essential managerial efforts from which a purchaser would reasonably expect to derive profits." (Interpretive Rule at 24.)

Here, the Second Amended Complaint ("SAC") alleges the type of promotional statements and promises the SEC says render the sale an asset like $JENNER an investment contract—not "representations or promises that are vague or contain no semblance of an actionable business plan" (Notice at 2 (quoting Interpretive Rule at 27)). For example, the SAC alleges Defendants' direct promises of effort, development, and growth, along with specific operational promises like obtaining exchange listings and engaging in PR campaigns and collaborations. (*See, e.g.,* SAC ¶¶ 133, 136, 139, 151, 158, 251-52). Likewise, it alleges their specific framing of $JENNER as a profit-making investment. (*See, e.g., id.* ¶¶ 137, 249-

*Azad et al. v. Jenner et al.,* Case No. 2:24-cv-9768-SB-JC
RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

50.) Plaintiff alleges he and others bought in "hoping to profit from Defendants' efforts" (SAC ¶ 3; *see also id.* ¶ 217). Thus the SAC does not allege the sort of "vague" or planless statements Defendants invoke, but rather their concrete commitments to build and promote the project to increase its value. At most, the Interpretive Rule demonstrates that whether promotional conduct creates an investment contract is a fact-intensive inquiry, poorly suited for resolution at the pleading stage.

Finally, Defendants say the Interpretive Rule concluded that the use of Redeemable Wrapped Tokens to distribute crypto assets in a liquidity pool, "does not alone make a crypto asset a security or its sale an investment contract" (Notice at 2 (citing Interpretive Rule at 57).) But the discussion they cite concerns whether such Tokens, which represent receipts for assets deposited in liquidity pools, themselves constitute securities, not whether the underlying asset, when promoted with profit-inducing representations, is sold as an investment contract.

Dated: March 23, 2026

Respectfully Submitted,

/s/ Jack Fitzgerald

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110

***Lead Counsel***